CULPEPPER, Judge.
This case originated as a suit by Reliable Rubber and Plastic Machinery Company, Inc. (“Reliable”), against Wirt Manufacturing, Inc. (“Wirt”), for the balance due on the purchase of a hydraulic manufacturing press. Wirt filed a reconventional demand against Reliable alleging that the press in question was defective and demanding return of the portion of the purchase price already paid, plus damages and attorney’s fees. Wirt also filed a third party demand and a reconventional demand against McLean Trucking Company, Inc. (“McLean”), alleging in both demands that if Reliable had not caused the damage to the press, then McLean had caused it during shipment of the press from New Jersey, the situs of the manufacturer, to Lafayette, the home of Wirt. McLean answered both the recon-ventional demand and the third party demand and filed a reconventional demand against Wirt on the Third party demand for $1,342.50 shipping charges, plus attorney’s fees. Reliable then joined McLean as an additional defendant alleging that McLean was liable to them for all sums necessary to repair the hydraulic press. Additionally, an exception of prescription to the claim by Wirt in redhibition was filed by Reliable.
The trial court found the hydraulic press was defective before being shipped by Reliable from New Jersey. The court maintained Wirt’s reconventional demand against Reliable for the following amounts: (a) $21,750 for the purchase price of the press, minus the $7,150 still owed on that purchase price; (b) attorney’s fees in the amount of $7,234.48; and (c) general damages in the amount of $50,000. Additionally, the court rendered judgment in favor of McLean and against Reliable in the following amounts: (a) $1,432.50 (apparently a typographical error — should be $1,342.50) for McLean’s transportation of the press and (b) an expert witness fee in the amount of $6,538.83.
Reliable has appealed all awards. Wirt appealed against McLean only, and did not answer the appeal by Reliable. McLean has not appealed or answered an appeal, and has not even filed a brief in this court.
The general facts as found by the trial court are as follows:
*1234 “On or about May 22, 1978, Reliable sold to Wirt a thirty eight inch by forty-two inch (38" X 42") hydraulic press with two (2) — thirty-eight inch by thirty-eight inch (38" X 38") platens for the sum of $21,-750.00. Prior to shipment, Wirt paid to Reliable the sum of $14,600.00. The balance due upon shipment was $7,150.00.
“Said hydraulic press was shipped via McLean Trucking Company on or about June 12, 1978, with anticipated receipt by Wirt no later than June 16, 1978. Wirt actually received said press on June 19, 1978. Upon arrival in Lafayette, the press was inspected by Mr. E.H. Pascal and Mr. Rodney Girouard, employees of Wirt Manufacturing Co. It was at this time that Wirt discovered that six out of a total eight gussets or webbing of the press were cracked from the bottom up the center member of the bottom platen bolsters. These gussets are essentially cantilever supports for a movable ram assembly of the press. Wirt representatives notified Reliable officials of the problems and sought relief. Wirt was told that, for a fee, the unit could possibly be fixed, or, in the alternative, to ship the unit back to New Jersey. No action to repair or correct the problems was thereafter undertaken.”
The ten issues on appeal will be discussed in the order presented in Reliable’s brief.
(1) WAS WIRT’S RECONVENTIONAL DEMAND IN REDHIBITION PRESCRIBED?
Reliable contends Wirt’s demand was filed in excess of one year from the date of the sale and is therefore prescribed. The trial court overruled the exception on the basis of Code of Civil Procedure article 1067. We concur.
Article 1067 states:
“An incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and is filed within ninety days of date of service of main demand or in the case of a third party defendant within ninety days from service of process of the third party demand.”
As noted by the trial court, it is the nature of Reliable’s business to buy used presses, recondition and/or reconstruct them, and then to resell them to their own customers. This is what occurred in the case of Wirt’s purchase. Reliable embosses its trademark on the outside of the presses. By its complete rebuilding of the machines and by holding itself out as a manufacturer, Reliable becomes the manufacturer for purposes of the redhibition articles. A manufacturer is presumed to know of the defect in the thing made by him. Rey v. Cuccia, 298 So.2d 840 (La.1974). This conclusion of law that Reliable was a manufacturer is not controverted by Reliable on appeal.
Under Civil Code article 2546, prescription on a redhibitory action does not begin to run against a manufacturer until the purchaser discovers the vice. The original suit was filed on June 5,1979. Personal service was obtained on the defendant Wirt on June 8,1979. Wirt discovered the defect in the hydraulic manufacturing press on June 19,1978, when the press was delivered to Lafayette, Louisiana. Thus, the claim was not prescribed when the original suit was filed. The answer and reconventional demand was filed by Wirt on July 15, 1979, less than 90 days after the filing of the original suit. Thus, under LSA-C.C.P. article 1067 Wirt’s claim is not prescribed.
(2) DID THE TRIAL COURT ERR IN FINDING THAT THE DEFECTS IN THE HYDRAULIC PRESS WERE PRESENT WHEN THE PRESS LEFT THE HANDS OF THE MANUFACTURER?
The trial court made a factual determination that a preponderance of the evidence revealed that the defect present in the hydraulic press upon delivery to Wirt Manufacturing in Lafayette, Louisiana was not caused by the negligence of McLean Trucking and did not occur in shipping. Instead, the trial court held that the defects occurred prior to shipping and were present when the press left the manufacturer’s hands. This factual finding of the trial *1235 court cannot be disturbed on appeal unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We find no such error.
Mr. John T. Butters, of Engineering Consultants, Inc., of Houston, Texas, was qualified as an expert in the field of mechanical engineering and the field of failure analysis. Butters examined the press on July 13, 1978. He found six cracks among the eight gussets which composed the bolster. He presented photographs of these cracks to the court. He testified that when he examined the gussets of the press he found corrosion, dirt, lint, grease and foreign materials in the cracks. Additionally, he found paint in the cracks which indicated to him that the machine had been painted subsequent to the occurrence of the cracks. He could find no impact damage to the outside of the press. This witness stated it was a physical impossibility for the press to have been damaged in this manner or in this degree during transportation from New Jersey to Lafayette, Louisiana. Mr. Butters based this conclusion on mathematical computations. He stated that in order for the transportation process to have caused the cracks observed in the hydraulic press, it would have been necessary for the tractor and trailer to travel at the rate of 1,200 miles per hour and stop in one second. Mr. Butters concluded the cracks were caused through eccentric loading or overloading of the gussets while still in the hands of Reliable, or before.
No expert testimony is offered by Reliable to dispute these findings. Mr. I. Cohn, the representative of Reliable, testified he really had no idea of what had caused the damage. He stated at one point that for all he knew, the damage could have been caused by someone hitting it with a sledge hammer.
Additionally, the testimony of the personnel from Wirt confirmed that the cracks were found when the tarpaulin covering the press was removed while the press was still located on the truck. This fact was confirmed by the McLean shipping representative who examined the press shortly after its arrival in Lafayette.
There is a clear preponderance of the evidence that the cracks were present prior to the shipping of the machine,
(3) DID THE COURT ERR IN ITS APPLICATION OF THE PRESUMPTION OUTLINED IN CIVIL CODE ARTICLE 2530 THAT IF A VICE APPEARS WITHIN THREE DAYS IMMEDIATELY FOLLOWING THE SALE, IT IS PRESUMED TO HAVE EXISTED BEFORE THE SALE?
The trial court applied Civil Code article 2530 and concluded the defects occurred within three days from the date of sale. We know as a matter of fact that the defects were first discovered upon delivery of the hydraulic press. However, the overwhelming testimony of the witnesses as set forth above makes it obvious that whether or not the three-day presumption under Civil Code article 2530 is applied, the defects were present when the press left the hands of the manufacturer. Because of the overwhelming weight of the testimony, we find it unnecessary to examine the appropriateness of the trial court’s application of the three-day presumption under Civil Code article 2530.
(4) DID THE TRIAL COURT ERR IN AWARDING TO WIRT AGAINST RELIABLE GENERAL DAMAGES IN THE AMOUNT OF $50,000 FOR LOSS OF PROFITS?
(5) DID WIRT HAVE AN OBLIGATION TO MITIGATE THEIR DAMAGES, AND, IF SO, DID WIRT MEET THAT OBLIGATION?
Because of their similarity, we will discuss issues 4 and 5 together. The testimony at trial revealed that Wirt had an agreement with International Mooring & Marine to supply them with bumper rings to be used in the installation of dock and fendering systems on offshore drilling rigs. Art Wirt of Wirt Manufacturing testified that there was no other company in Louisiana which was capable of supplying Inter *1236 national Mooring & Marine with this product. Their closest competitor was located in Houston or Fort Worth-Dallas. Because of Lafayette’s proximity to the Gulf, Mr. Wirt testified his company had two advantages over competitors. It was closer to the area which it was supplying, and it could sell the fenders at a cheaper price.
Wirt obtained an agreement with International Mooring & Marine whereby IM&M agreed to reimburse Wirt Manufacturing for one-half of the purchase price of the hydraulic press. Thus, Wirt’s specific purpose in purchasing the press from Reliable was to manufacture fenders for International Mooring & Marine. Wirt proved that at the time it purchased the press it already had an initial order from IM&M for 166 of these rubber bumpers.
Testimony at trial revealed, and it was uncontested on appeal, that the press was not suited for the purposes for which it was intended. Because of the cracks in the gussets, Wirt was afraid to endanger its personnel by using the full power and force necessary to properly mold the rubber rings. After production of approximately 50 rings, Wirt ceased manufacturing them out of rubber and began experimenting with different processes. Eventually, Wirt ended up manufacturing the rings out of a urethane product. The cost of this urethane was approximately three times that of the rubber. Even considering the manufacturing process and overhead involved in manufacturing the bumpers out of rubber, Wirt lost money on each bumper manufactured out of the urethane compound.
After discovering this hard economic fact, Wirt received additional orders on the phone from IM&M for 250 more rings. They went ahead and filled this order with the urethane rings. Wirt was able to renegotiate a better price per ring, but this price still fell short of the actual cost of manufacturing. Mr. Wirt stated that he took a calculated risk in fulfilling these contracts without the use of the press. He did so in hope that he would be able to eventually resolve the problem and capture this newly opened market. Eventually, IM&M made the decision not to pursue the business venture any further. Wirt refunded IM&M all sums they had expended.
Mr. Wirt testified that as a result of having to substitute the urethane compound for the rubber compound, he suffered a loss in the amount of $40,000 to $48,000. Based on figures presented at trial, Wirt calculated he would have made a profit on each bumper ring of $103.32. This means that the expected profit on the initial order of 166 bumper rings for Wirt Manufacturing was $17,098.39. Instead, Wirt was only able to realize his profit on 50 of the bumper rings. On the other 116, Wirt lost $69 per ring, for a loss of $8,400.
On the second order for 250 additional bumper rings, Wirt lost $46.80 per ring, or a total of $11,700. If Wirt had been able to manufacture this order out of the rubber compound, and even keeping the previous lower price, the expected profit to Wirt would have been $25,857.50. The expected profit on the two orders was $43,026.99.
Additionally, there was testimony in the record that there were incidental expenses between $400 and $500 for the connection of the non-functioning press. Mr. Wirt testified that a special mold to make the rubber donuts had been confected by a machine shop to make bumper rings on the non-functioning press at a cost of about $6,000.
We conclude the award of $50,000 general damages by the trial court is amply supported by the evidence.
(6) DID THE TRIAL COURT ERR IN DENYING RELIABLE’S MOTION AT TRIAL TO INSPECT THE PRESS?
During the course of trial, counsel for Reliable made a motion to actually inspect the hydraulic press. This came upon his discovery in the examination of Mr. Butters, McLean’s expert, that he had not taken the platen off of the bolster of the press, to examine this phase of the bolster. The expert testified that based on his other findings, this was unnecessary. Counsel for Reliable then insisted to the court that Reliable had a right to disassemble the machine.
*1237 This matter came for trial on August 27, 1981, over two years after the original suit had been filed. The record is composed of approximately 300 pages of pleadings. Among these are extensive interrogatories propounded by all parties. Counsel for Reliable filed at least three requests for production of documents, admissions, etc. The deposition of Mr. Butters had been taken prior to trial. Ample discovery opportunities were afforded to Reliable who could have made this request prior to trial. The trial court has great discretion in such matters. In this case, the interest of justice and expediency justified that Reliable’s request be denied.
(7) DID THE TRIAL COURT ERR IN ITS AWARD OF AN EXPERT WITNESS FEE IN THE AMOUNT OF $6,538.83?
The court awarded an expert witness fee of $6,538.83 to McLean Trucking, who had hired Mr. Butters. The basis of this award was Mr. Butters’ itemized statement to the court which included his fee for over 75 hours of research, as well as his expenses. While his fee is high, the court has great discretion in fixing these matters. Therefore, the award of the trial court is upheld.
(8) DID THE TRIAL COURT ERR IN PERMITTING AN AFFIDAVIT EXECUTED BY WIRT’S COUNSEL AS TO THE AMOUNT OF ATTORNEY’S FEES INTO THE RECORD AFTER THE EVIDENCE WAS CLOSED?
The affidavit of attorney’s fees by Wirt was filed in the record subsequent to the closing of the evidence. Apparently, it was filed at the request of the court. Counsel for Wirt had previously stated its request to submit the bill after the four-day trial was concluded and he had an opportunity to tally up expenses. The court made no verbal acknowledgment of this request at the time. Once again, this was within the discretion of the trial court. We find no abuse of that discretion.
(9) DID THE TRIAL COURT ERR IN AWARDING JUDGMENT AGAINST RELIABLE IN FAVOR OF McLEAN FOR THE SUM OF $1,432.50 DUE McLEAN FOR TRANSPORTATION COSTS?
McLean filed no claim against Reliable for these amounts anywhere in the pleadings. Accordingly, the trial court’s award to McLean must be reversed.
The question remains whether Wirt or McLean are entitled to any relief on appeal in this area. Wirt argues in brief that it is entitled to be reimbursed for these amounts as an additional element of damages. However, Wirt has not answered the appeal of Reliable and has only appealed as against McLean, arguing in the alternative that if this court overturns the finding of liability against Reliable, then McLean should be held liable for Wirt’s damages. Thus, Wirt is not entitled to judgment on appeal against Reliable for the transportation costs. As to McLean, it has not appealed nor answered the appeal of Reliable or Wirt. Accordingly, McLean is entitled to no relief on appeal.
(10) DID THE TRIAL COURT ERR IN DENYING RELIABLE’S MOTION FOR A NEW TRIAL?
Code of Civil Procedure article 1972 (2) states:
“A new trial shall be granted, upon contradictory motion of any party, in the following cases:
* * * * * *
“(2) Where the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial; or”
The basis of Reliable’s motion for a new trial is the opportunity to inspect the machine in question and to dismantel it. As stated above, counsel for Reliable had adequate opportunity to have its experts inspect the machine during the two years prior to trial. Additionally, there is a note *1238 in the record that counsel for Reliable had himself in fact inspected the machine. There is no evidence that free access to the machine was ever denied to Reliable. Additionally, counsel for Reliable had previously deposed the expert whose testimony he now claims revealed “new” evidence.
Reliable’s motion for new trial is without merit. The alleged “new” evidence could have been obtained with due diligence prior to trial. The denial of the motion for a new trial is upheld.
For the reasons assigned, the judgment appealed is amended to delete therefrom the award in favor of McLean against Reliable in the sum of $1,432.50 for shipping costs. Otherwise, the judgment is affirmed. All costs of this appeal are assessed against Reliable.
AFFIRMED, AS AMENDED.