FORET, Judge.
This is an action ex delicto in which Carolyn Faye Dickson (Plaintiff), individually and as administratrix of the estate of her minor child, Calvin James Blanco, seeks to recover damages for personal injuries suffered by that child.
The named defendants are: Allstate Insurance Company (Allstate), whose liability is predicated on the alleged negligence of a minor child of Harold Touchet, its insured; and State Farm Fire & Casualty Company (State Farm), whose liability is predicated on the alleged negligence of a minor child of Ira Oertling, its insured.
Both of these defendants filed third party demands against the Lafayette Parish School Board (School Board) and its liability insurer, Continental Insurance Company (Continental); and Venetian Manufacturing and Sales Corporation (Venetian), a Louisiana corporation.
The School Board and Continental then filed third party demands against Venetian; Ira Oertling, individually and as administrator of the estate of his minor daughter, Donna Oertling and his liability insurer, State Farm; and Harold Touchet, individually and as administrator of the estate of his minor daughter, Caroline Touchet.
This was essentially the posture of the parties as the case went to trial before a jury. The jury returned a verdict against Allstate and State Farm, in favor of plaintiff and in favor of third party defendants, the School Board and Venetian. Allstate and State Farm bring this suspensive appeal and they present the following issues:
*517 1. Whether the trial court committed reversible error in denying defendants’ motion for a directed verdict in the presence of the jury;
2. Whether the children of defendants’ insureds were negligent;
3. Whether the trial court erred in excluding certain evidence presented by the defendants on the grounds that it was irrelevant;
4. Whether the trial court erred in excluding certain testimony given by defendants’ expert;
5. Whether the trial court abused its discretion in informing the jury of the amounts of damage claimed by the plaintiff in her petition;
6. Whether the quantum awarded by the jury is excessive.
FACTS
This action arises out of an accident which occurred on the premises of Lafayette Elementary School in Lafayette, Louisiana, on May 9, 1977. Plaintiff’s minor son, Calvin Blanco, 14 years of age, was leaning on the sill of a window of the school auditorium talking with Caroline Touchet, Donna Oertling, both 13 years of age, and some other students who were inside the building. The Venetian blinds attached to that window fell at this time and struck young Calvin on the arm, seriously lacerating him.
Plaintiff instituted this action as a result of the accident, contending that it was caused by the negligent acts of the two minor girls, Donna and Caroline. Plaintiff alleged that Donna Oertling negligently raised the Venetian blinds without making sure it was secured and, thereafter, Caroline Touchet suddenly began pulling and yanking on the cord of the Venetian blinds, causing the blinds to fall and injure Calvin.
The defendants then filed third party demands against the School Board and Venetian alleging negligence on the part of the School Board in allowing a dangerous condition to exist on its premises when it knew, or should have known, of the unsafe or defective condition of the Venetian blinds. Further, defendants sought to hold Venetian strictly liable for producing a defective product, i. e., the blinds.
The principal and incidental actions were tried before a jury which returned a verdict finding the defendants liable to the plaintiff in the amount of $15,000.00. The jury, in addition, found no negligence on the part of the School Board and that no defective product had been manufactured by Venetian. The defendants appeal suspensively from the judgment of the trial court rendered pursuant to that verdict.
THE DIRECTED VERDICT
Counsel for defendants moved for a directed verdict at the close of plaintiff’s case. They informed the trial court that they had a “preliminary” motion to file and asked if it would like to retire the jury. The trial court declined to do so, stating that it thought it knew what the motions were and denied them after a visual inspection (apparently the motions were in writing).
Defendants argue that the trial court’s handling of the motions for directed verdict in front of the jury was prejudicial to their case and constituted an improper comment by the trial court on the facts. This contention is without merit.
We find that the conduct of the trial court was in no way prejudicial to defendants, nor did it constitute an improper comment by that court on the facts. The jury had absolutely no idea of what had transpired, and even if they did, it would be no more prejudicial than other acts of the trial court which take place in the presence of the jury such as the rulings on objections, etc.
THE ALLEGED NEGLIGENCE OF THE MINOR GIRLS
Defendants argue that there was no evidence presented by the plaintiff which suggests actionable negligence on the part of Donna Oertling or Caroline Touchet in handling the Venetian blinds, and they argue *518 that it was error for the jury to find otherwise. We disagree.
“When there is evidence before the trier of facts which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error.” Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Therefore, the appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding of the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Dof-flemyer v. Gilley, 384 So.2d 435 (La.1980).
No incident of Venetian blinds falling at the school had ever happened before this accident or since. There is evidence which indicates that Donna raised the Venetian blinds by grabbing the string and walking with it until the blinds were fully raised, at which point the blinds became stuck. Then she released the string and Caroline grabbed it and started pulling, yanking and jerking on it until it fell, causing the injury complained of.
This action went to trial some three years after the accident occurred. Donna and Caroline both appeared to be somewhat confused at the trial as to how the accident actually happened. They made statements while under examination and cross-examination which were somewhat inconsistent with earlier statements made in depositions. Thus, plaintiff was able to place some of these “prior inconsistent statements” before the jury for impeachment purposes.
Melissa Richard, another student present when the accident happened, testified for the defendants. She stated, upon examination, that Donna and Caroline were not playing with the blinds when they fell. However, she too was impeached with “pri- or inconsistent statements” made during an earlier deposition.
Plaintiff was able to elicit testimony from the girls themselves and from another student present at the time of the accident to the effect that Donna and Caroline were indeed handling the blinds when they fell.
We find that, while there is no evidence of another cause (besides the negligent conduct of the girls) for this accident, there is ample evidence that it was caused by the negligence of Donna Oertling and Caroline Touchet. Therefore, it is our determination that the record as a whole establishes that the jury’s finding of negligence in the actions of the girls as being the cause of this accident is not clearly wrong, but on the record, clearly correct.
RELEVANCY OF OTHER LATCHING MECHANISMS MANUFACTURED BY VENETIAN
The defendants brought their third party demand against Venetian, alleging that the Venetian blinds and latching mechanisms were defective in either design or manufacture or lacked adequate warning that the product was unreasonably dangerous for normal use. The defendants sought to introduce into evidence a different type of Venetian blind latching mechanism which was also manufactured by Venetian and had been used on some of the blinds at the school.
Defendants sought to introduce this evidence in an attempt to show that the latching mechanism on the blind which fell and the brackets which held it were constructed of a flimsy, light gauge metal, inferior in comparison to that of the latching mechanism used in these other blinds. The trial court excluded this evidence as being irrelevant. We agree.
The only issue before the jury on defendants’ third party demand against Venetian was whether the blinds which injured Calvin were defective and the different design of some other blinds at the school was irrelevant with respect to this issue. The jury viewed the blinds which fell, and it was their decision that these blinds were not defective.
*519 EXCLUSION OF DEFENDANTS’ EXPERT TESTIMONY
Defendants sought to introduce the testimony of Robert Owens, who the court did accept as an expert. Owens has a bachelor of science degree in Industrial Technology. He was involved in consulting work for different firms in which he would inspect their facilities and make recommendations on how to improve them with an eye for safety. Owens considers himself an expert in the control and elimination of hazards in the workplace and in the public environment.
On traverse, it was brought out that Owens had never made any studies or surveys pertaining to the safe design and use of Venetian blinds. It was also brought out that he had never studied any applicable safety manuels or regulations on design factors pertaining to the manufacture and use of Venetian blinds.
The trial court recognized Owens as an expert in the field of industrial safety and in the detection and control of accident exposures to both the people in the industry and the public. Owens was then placed on the stand.
Defendants attempted to question Owens on what type of metals had been used in the manufacture of the latching mechanism and brackets in question, and what properties these metals possessed. Opposing party objected to this line of questioning and was sustained by the court. The court noted that Owens had made no tests on these particular objects and that he had not been qualified as an expert in the analysis of metals.
Defendants also sought to elicit testimony from Owens, over objection, as to his opinion on the inherent safety aspects of the design of the above objects and his recommendations as to how the design could have been improved to make it safer. Objections to this line of questioning were sustained by the court which noted that Owens had no expertise in the design of such objects for Venetian blinds nor had he made any studies in that area.
Defendants argue that it was error for the trial court to exclude this testimony which they sought to elicit from Owens. We disagree.
The record reflects that Owens was qualified and accepted by the court as an expert on a fairly narrow range of subjects. The above testimony would have clearly been outside of his field of expertise as the trial court correctly concluded. We find no merit in defendants’ contention.
INFORMATION GIVEN THE JURY AND QUANTUM
The trial court instructed the jury on the law applicable to this case upon conclusion of the trial. A request was made by the jury shortly thereafter for information regarding the various amounts of damages sought by plaintiff as set forth in the petition. The foreperson of the jury explained the request by stating that it was the jury’s understanding that they could award plaintiff no more than the amount prayed for in the petition. The trial court complied with this request by orally stating the amounts itemized in the petition.
Defendants argue that it was error for the trial judge to give this information to the jury and contend that it was an improper comment on the evidence as prohibited by LSA-C.C.P. Article 1792.[1] We fail to see how the mere reading of the amounts claimed by a plaintiff as set forth in his petition can be considered a comment on the evidence.
The trial court, in instructing the jury, had informed them that under no circumstances could they award the plaintiff a greater amount than that set forth in her petition. It is obvious that after the jury had retired it realized that no information regarding those amounts had been given it *520 and it wanted that information so that it could make an award within the limits.
Defendants next argue that the action of the trial court was prohibited by LSA-C.C.P. Article 1794.[2] This article generally forbids the jury from taking written evidence with them when they retire to deliberate.
We find that the information requested by the jury was given orally and was in no way presented as evidence to them. Therefore, defendants’ contention lacks merit.
QUANTUM
Finally, defendants argue that the amount of damages awarded by the jury is excessive and a clear abuse of their discretion.
This Court is bound by the methodology of appellate review of trial court awards as set forth in Reck v. Stevens, 373 So.2d 498 (La.1979) on page 500 where the Court stated:
“We do re-emphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.”
Thus, our initial inquiry is whether the trial court award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact’s “much” discretion. Reck v. Stevens, supra; LSA-C.C. Article 1934(3).
Dr. Margaret Longo testified on behalf of plaintiff. She stated that she treated Calvin in the emergency room of the hospital where he had been taken and later performed surgery to repair the wound. A local anesthetic was administered and the wound opened and cleaned in preparation for surgery.
Dr. Longo testified that the right hand was lacerated with the wound running from the top side of the right wrist to the base of the right thumb. The injuries revealed during surgery included a cut in a small branch of nerves leading to the top side of the hand, the severance of certain blood vessels branching out from the major artery in the area of the wound, the radial artery and five tendons which were also cut.
Calvin remained in the hospital for two days after surgery. The wound was then monitored for approximately one month for signs of infection and the stitches were removed.
It was after this one-month period that Calvin started on physical therapy which lasted for approximately seven months in an attempt to restore the full use of his hand.
Dr. Longo testified that it was her opinion that there would be a permanent physical impairment of the injured area (wrist, hand, etc.) of four percent. She also stated that she felt there was no permanent functional impairment, i. e., Calvin could still perform all normal functions of a human hand with the one that had been injured. Defendants presented no medical evidence to the court.
We find no clear abuse of the trier of fact’s “much” discretion based on our analysis of the facts present in this case.
Defendants also argue that the reading of the amounts sought by plaintiff to the *521 jury as mentioned above caused them to return an excessive verdict. They note that, while plaintiff asked for $7,500.00 for medical expenses in her petition, the parties later stipulated that this item of damage amounted to $3,730.27. Defendants contend that the jury erroneously awarded plaintiff the $7,500.00 for medical expenses.
We find defendants’ contention to be no more than mere speculation. The jury’s damage award was rendered as a lump sum and it is impossible to tell how much was awarded for each item of damage.
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of these proceedings are assessed against defendants-appellants.
AFFIRMED.

. “Art. 1792. Contents of charge to jury
In his charge to the jury the judge shall instruct the jurors on the law applicable to the cause submitted to them, but he shall not recapitulate or comment upon the evidence so as to exercise any influence upon their decision as to the facts.”

. “Art. 1794. Taking evidence to jury room
In reaching a verdict the jurors must rely upon their memories, and, when they retire from the jury room to deliberate, they shall not be allowed access to any written evidence or to any notes of the testimony of any witness, but they may take with them any object or document received in evidence which requires a physical examination to enable them to arrive at a just conclusion.”