486 So.2d 1021 (1986)
Gloria S. DAVIS, Plaintiff-Appellant,
v.
GALILEE BAPTIST CHURCH, Cleon Bryant and United States Fidelity & Guaranty Company, Defendants-Appellees.
No. 17634-CA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1986.
Rehearing Denied April 30, 1986.
*1023 Bowers & Bowers by Gary A. Bowers, Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts by Caldwell Roberts, Shreveport, for defendants-appellees.
Before HALL, MARVIN and JASPER E. JONES, JJ.
MARVIN, Judge.
In this action for damages arising out of a vehicular collision, plaintiff appeals, seeking to increase the award and to reverse the trial court's finding her 25 percent comparatively negligent.
We amend to hold the defendant driver, who was making a left turn from a private driveway onto the city street, solely at fault and to increase the award. Reck v. Stevens, 373 So.2d 498 (La.1979); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The accident occurred on a rainy afternoon in February 1984 on Pierre Avenue in Shreveport when the defendant drove a school bus owned by the Galilee church from the parking lot of the church and was making a left turn into the street to proceed northerly on Pierre. The defendant driver failed to see Ms. Davis who was proceeding northerly on Pierre. The right front of the bus and the left front side of Ms. Davis's 1969 Oldsmobile collided in Ms. Davis's lane of travel. Pierre is a conventional two-lane city street marked by a center line for traffic proceeding northerly and southerly. Parking was not allowed on the west or church side of the street but was allowed on the east side of the street. There were no cars parked in the area of the church when the accident occurred. The wipers and headlights of both the bus and the car were "on" because of the rain. The "running lights" of the bus were also illuminated.
Pierre Avenue is relatively level near the scene and, except for the rain, visibility of each driver was unobstructed. Ms. Davis was driving an estimated 20 mph, well within the speed limit, and at all times in the proper lane of travel. She said, "as I got to the church, I suddenly saw a bus ... I blowed my horn. I wheeled to the right to try to avoid the bus but I couldn't ..." On cross-examination she explained, "when I noticed it, it was on the street at me [and] boom, is when I noticed it." She reiterated that she did not see the bus until just before it hit her and that her reaction was to blow her horn and "wheel" to the right. Ms. Davis said the bus knocked her car on the sidewalk. The description of how and where the vehicles were situated after the accident, given by the investigating officer, generally corroborated Ms. Davis.
The defendant driver testified that he drove from the parking lot intending to turn left and proceed northerly on Pierre, that he stopped and looked and then proceeded into the street at about five mph, "I did not see her and until this day I still can't see how I could have possibly run over her." He admitted that he had no *1024 explanation, "other than the fact that she came out of nowhere." Defendant driver explained, "when I entered the southbound lane of Pierre ... I still did not see anybody coming. I saw Ms. Davis when she was under the right ... fendershe hit the right corner fender of the bus ... which bent [her] fender over her left front wheel."
The trial court made no specific findings of fact other than Ms. Davis was traveling north on Pierre and the bus was attempting to turn left from the parking lot to proceed northerly and that both were traveling at a very slow speed. In brief written reasons for allocating negligence, the trial court said that anyone who operates a motor vehicle has an unending duty to observe that which he can see.
A motorist who is about to enter a roadway from a private driveway is required to yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. LRS 32:124. Unusual, extreme, and high care toward favored traffic is required of such a motorist under the case law. See Travelers Insurance Company v. Harris, 294 So.2d 588 (La.App. 4th Cir.1974); Holland v. United States Fidelity & Guaranty Co., 131 So.2d 574 (La.App. 2d Cir.1961); Garcia v. Anchor Casualty Company, 148 So.2d 371 (La.App. 1st Cir.1962). Conversely, the duty of the driver on the favored street toward the intruding motorist is the much lesser ordinary care and that driver generally may rely on the assumption or presumption that those vehicles entering the roadway from less favored positions such as a private drive will not drive into the path of favored traffic. The motorist who is otherwise proceeding lawfully on the favored street is not required to look out for or search in anticipation of careless drivers who might enter his right of way from a private driveway in violation of the statute. Gutierrez v. Columbia Casualty Co., 100 So.2d 537 (Orl.App.1958); Vidrine v. Simoneaux, 145 So.2d 400 (La.App. 3d Cir.1962). The presumption or assumption may not be relied on by a motorist who is proceeding unlawfully before or after he sees the intruding vehicle. See Joseph v. Boudreaux, 230 So.2d 352 (La.App. 1st Cir. 1969); Cole v. Maryland Casualty Company, 205 So.2d 863 (La.App. 3d Cir.1968); and Blashfield, Automobile Law and Practice, § 120.27 (1970), and Louisiana cases cited therein.
Ms. Davis was proceeding with her lights on and well within the speed limit. Even had she seen the bus when it was stopped just before it entered Pierre, she was under no duty to anticipate the bus would violate her right of way. She was proceeding lawfully and was under no duty to anticipate or lookout for vehicles that might enter into her lane of travel from a private driveway across the street contrary to § 124 and the cited cases. Once she sees the intruding danger she may be found negligent for failing to use ordinary care to avoid the accident if the circumstances of speed, control, time, and distance would have allowed her to do so. The burden of showing these circumstances, however, is on the intruding driver. See Blashfield, supra.
The defendant driver, on the other hand, was not proceeding lawfully in departing from the private driveway and making a left turn across the favored street. See cited authorities. Defendant's counsel argues neither driver saw the other until impact. The trial court made no specific finding in this respect and we do not so find. When the totality of the testimony of both drivers is considered, the record does not support counsel's argument.
Ms. Davis, traveling northerly about 20 mph saw the bus "on the street at me" and reacted by blowing her horn and "wheeling" to the right. The only estimate of the width of the southbound lane of Pierre was 12 feet. The record does not show other distances. The bus was proceeding at five miles an hour, according to its driver. Ms. Davis was some distance from the bus when she noticed the danger it posed, "coming," she said, "straight out" of the parking area toward her. Whatever distance the bus traveled through the *1025 southbound lane before impact across the center line and in the northbound lane after Ms. Davis saw it, and whether more or less than 12 feet, the car was a much greater distance from impact than was the truck and was "closing" faster because of the difference in the speed of the two vehicles. On this record, Ms. Davis was faced with a sudden emergency. Assuming that she should have seen the bus sooner does not prove facts of negligence on Ms. Davis' part. If she had seen the bus slowly maneuvering in the parking lot or when it stopped before entering the street, she was legally entitled to assume it would not intrude into her right of way. We can find nothing in this record of any untoward maneuver of the bus until it entered the street from a stopped position that would have alerted Ms. Davis that an accident was imminent. We cannot say that when the bus pulled out into the street from its stopped position, Ms. Davis' circumstances were such that in the exercise of ordinary care, she could have avoided the accident. Facts from which these circumstances might be inferred were not proved and we cannot assume them. Towns v. Georgia Cas. & Sur. Co., 459 So.2d 124 (La.App. 2d Cir.1984). It was not shown how far the bus intruded in the northbound lane at impact. Ms. Davis said the impact knocked her car upon the easternmost sidewalk. The cost of repairing each vehicle was not shown. Defendant had the burden of proving Ms. Davis' comparative negligence and has not met that burden in this record. See Blashfield, §§ 63.2, 416.7. See Case v. Arrow Trucking Co., 372 So.2d 670 (La. App. 1st Cir.1979).
In Towns, supra, the vehicular collision occurred while one vehicle was making a sweeping right turn at a "T" intersection, a place where an approaching plaintiff vehicle should anticipate another's right turn. Opinion testimony was there presented by accident reconstruction experts. We found substantial and credible evidence in that record from which that trier of fact could have deduced that that plaintiff was not as observant as she should have been when 180 feet away and upheld the allocation of 10 percent comparative negligence to plaintiff.
This record is simply devoid of factual or opinion evidence upon which we might uphold the trial court's "finding" that this plaintiff was 25 percent comparatively negligent. Each driver bears the burden of proving facts that support the finding of negligence on the other. Ms. Davis bore her burden. Defendant did not. The sole cause of this accident rests with defendant driver. We must find the trial court was clearly wrong in concluding otherwise and shall amend the judgment in that respect.

ADEQUACY OF DAMAGES
The trial court awarded $3,500 for myoligamentous strains of the cervical and lumbar spine which were not considered severe by Ms. Davis's treating orthopedist. The court also emphasized that Ms. Davis did not take off from work as a school board employee as her doctor instructed her to do. She said she did use, however, four days of her sick leave. Ms. Davis was still undergoing treatment a year after the February 26, 1984, accident and her doctor suggested that she might have a herniated cervical disc. Loss of sick leave is compensable. Kipp v. Hurdle, 307 So.2d 125 (La. App. 1st Cir.1974). The trial court's damage award, while a low award for the spinal injuries, will not be disturbed because it is not so low as to constitute an abuse of the trial court's discretion. Coco, supra; Reck, supra.
Ms. Davis also was found to be suffering pain and to be exposed to approximately 10 percent disability in her hands from carpal tunnel syndrome that developed in both wrists after the accident. The trial court noted that Ms. Davis's treating orthopedist and defendant's orthopedist were diametrically opposed on whether the accident caused the syndrome. The court said it was "convinced" by defendant's expert that the syndrome "could" be caused other than by the accident and that plaintiff had not met her burden of proving cause in fact. We must respectfully disagree because *1026 defendant's expert based his conclusion essentially on the "fact" that Ms. Davis did not complain or exhibit symptoms of discomfort in either hand until late in 1984 and early in 1985 when positive test results indicated the syndrome. The record does not support this "fact."
When Ms. Davis first saw her treating orthopedist about two days after the accident she completed a questionnaire containing such questions as DO YOU HAVE PAIN? ____, Where? ____ When? ____. She answered DO YOU HAVE SWELLING? "yes." Where? "left hand." When? "just starting." Plaintiff's primary complaints related to her spinal injuries. On June 26, 1984, her orthopedist noted among other complaints that she complained of some numbness and tingling in her right hand. Her orthopedist saw and treated her conservatively on February 28, March 21, June 15, June 26, August 1, September 14, September 21, December 12, 1984, January 7, and February 11, 1985. The syndrome was positively diagnosed in late 1984 and early 1985. Her doctor agreed that the syndrome, like tendonitis, could possibly be caused from normal activities, but opined that Ms. Davis's syndrome was related back to the accident in 1984.
Defendant's orthopedist saw and examined Ms. Davis for about 20 minutes on December 6, 1984. He did not examine her for the syndrome because she did not specifically complain to him about either hand. He generally agreed with her orthopedist about the cervical injury. He agreed that the symptoms Ms. Davis gave her orthopedist on February 28, on June 26, and September 21, were "not entirely inconsistent" with the syndrome. He opined, however, that he did not relate the syndrome to the accident "because the symptoms appeared many months later [sic] ... in both hands, which would seem unusual ... and its rarely reported following ... automobile trauma. [I]t is usually just a nonspecific tendonitis."
Opinion evidence must be based on facts. Marks v. Pan American World Airways, Inc., 591 F.Supp. 827 (E.D.La. 1984); State, Dept. of Highways v. Beaird-Poulan, Inc., 292 So.2d 842 (La.App. 2d Cir.1974). When some symptoms of an injury appear shortly after a traumatic incident that are consistent with that incident and continuously worsen, a defendant who contests the cause-in-fact relationship must show some other particular incident could have caused the injury in question to overcome plaintiff's case. Miller v. Allstate Insurance Company, 221 So.2d 908 (La. App. 1st Cir.1969). Plaintiff established, prima facie, that she had symptoms consistent with the syndrome shortly after the accident and that these symptoms gradually worsened and were causally related to the accident. Under these circumstances we find that plaintiff met her burden of proof and that her prima facie case was not overcome by defendant's evidence. We shall amend the judgment to allow damages for the syndrome. Reck, supra.
Defendant's expert agreed that surgery might be necessary on one or both wrists to afford plaintiff some relief from the syndrome, at an estimated cost of about $3,500 for each wrist, and that plaintiff would have about 10 percent disability in each wrist if the surgery was necessary. We consider $16,000 to be a fair and just award for the carpal tunnel syndrome and the possibility of surgery in one or both wrists with some resulting disability. For a description of the causes and effects of carpal tunnel syndrome, see Murphy v. Piro, 240 So.2d 111 (La.App. 4th Cir.1970); and Glover v. Poydras, 314 So.2d 417 (La. App. 4th Cir.1975). For a comparison of amounts recently awarded plaintiffs with 4 percent to 15 percent permanent hand or wrist disability resulting from other causes, see Lescale v. Louisiana Coca Cola Bottling Co., 422 So.2d 241 (La.App. 4th Cir.1982); Dickson v. State Farm Ins. Agency, 396 So.2d 514 (La.App. 3d Cir. 1981); and Palmer v. Stokes, 444 So.2d 213 (La.App. 1st Cir.1983).
Ms. Davis was paid by the hour for her work as a sweeper for the school board. Rather than remand for the purpose of assessing damages to compensate *1027 Ms. Davis for the loss of four days sick leave, we shall increase the award for special damages by $120 in the interest of judicial economy.

DECREE
The judgment is amended to increase the special damages from $914 to $1,034, to increase the general damages from $3,500 to $19,500, to delete the reference to plaintiff's comparative negligence, and to award legal interest on the judgment from date of demand, subject to credit for amounts previously paid by defendants.
As thus amended, and at the cost of appellees, the judgment is AFFIRMED.