561 So.2d 931 (1990)
Wilma Mae HARRIS and Cecil G. Harris, Plaintiffs-Appellants,
v.
Luke G. BURCH and Shelter Mutual Insurance Company, Defendants-Appellees.
No. 21431-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1990.
*932 Bruscato, Loomis & Street by Anthony J. Bruscato, Monroe, for plaintiffs-appellants.
Hudson, Potts & Bernstein by Ben R. Hanchey, Monroe, for defendants-appellees.
Before HALL, FRED W. JONES, Jr., and HIGHTOWER, JJ.
HIGHTOWER, Judge.
In this automobile accident case, Wilma Mae Harris ("plaintiff") and her husband, Cecil G. Harris, appeal a judgment denying their respective claims for personal injury and loss of consortium against Luke G. Burch ("defendant") and his liability insurer, Shelter Mutual Insurance Company. For the reasons hereinafter expressed, we affirm.

FACTS
About mid-morning on November 11, 1986, plaintiff was on her way to pick up her friend, Bonnie LeBrun, to take her to VoTech school. In a rural area approximately seven miles west of Oak Grove, she passed Bonnie and her husband, James LeBrun, on Louisiana Highway 2, a two-lane, east-west roadway which is straight and level in that vicinity. Mr. LeBrun was taking his wife in search of plaintiff, who seemed to be 15 to 30 minutes late in picking up Mrs. LeBrun. It had been raining.
Upon seeing the LeBruns, plaintiff backed her 1983 Chevrolet Impala into the easternmost drive of a U-shaped driveway at a residence on the north side of the highway. Mr. LeBrun turned around and returned to that location, stopping his car facing west on the north shoulder of the highway, approximately eight feet east of the drive where plaintiff was situated. Mrs. LeBrun exited her husband's vehicle and entered the Chevrolet, at which time plaintiff asked Mrs. LeBrun to read aloud questions from a textbook in an effort to prepare for a test to be given that day at their school.
Plaintiff recalls that, prior to pulling onto the highway, she looked to her left and to her right to make sure it was safe for her to turn right into the westbound lane of travel. The only traffic in the area consisted of two cars, both traveling in the eastbound lane. While still looking to her right, plaintiff pulled onto the highway and "proceeded down the road." At that time she observed defendant's vehicle cross the center line and enter her lane of travel in an attempt to pass the other eastbound auto. According to plaintiff, she steered to the right in an effort to avoid a collision, but the two cars struck head-on at a point just west of the westernmost drive of the U-shaped driveway. She testified that the force of the impact caused the front ends of both automobiles to lift up in the air "like two bulls ramming each other." *933 Plaintiff stated that, as the vehicles separated, her car spun to the right three times before coming to rest in a ditch, and in the process her rear passenger door struck Mr. LeBrun's right front bumper.
Defendant, on the other hand, remembers traveling in an easterly direction on Highway 2, when he caught up with a small brown pick-up truck going approximately 45 miles per hour. Before beginning a passing maneuver, he confirmed that there was no traffic in the westbound lane. The only other vehicles in the vicinity were those of plaintiff and Mr. LeBrun, both parked on the side of the road. After determining that it was safe to pass the pickup truck, defendant entered the westbound lane. When he had gotten "up beside the pickup truck," he saw plaintiff's car move forward so that only its front end entered the highway. Due to the location of the pickup and the sudden movement of plaintiff's vehicle, he was unable to avoid the accident. His left front bumper struck the right front fender of plaintiff's Chevrolet. The force of the impact sheared off plaintiff's bumper and grill and caused her car to spin to the left, hitting the LeBrun automobile. Defendant's bumper was bent under the left front wheel, and his vehicle finally stopped in a bean field north of the highway.
A thirteen-year veteran with the Louisiana State Police, Trooper Aaron Brittain, arrived approximately 48 minutes after the mishap to investigate. He interviewed the two drivers and inspected the vehicles; he observed debris in the westbound lane of travel approximately 15 to 20 feet west of the driveway in which plaintiff had been parked, such debris being scattered back toward the driveway; and he noted there were no skid marks left by either automobile. Trooper Brittain determined that, at the time of impact, plaintiff's vehicle was just straightening up as it came out of the driveway.
At trial, defendant was found free of fault in causing the accident. This appeal, involving three assignments of error, ensued.

DISCUSSION

Assignment of Error No. 1
This assignment of error complains that the district court committed manifest error in concluding that the accident was caused through the sole fault of plaintiff-appellant.
A motorist preparing to enter a highway from a private driveway is required to yield the right-of-way to all approaching vehicles so close as to constitute an immediate hazard. LSA-R.S. 32:124. Although not required to desist from entering so long as traffic is in sight, Nevils v. Travelers Ins. Co., 255 So.2d 184 (La.App. 3rd Cir.1971), writ denied, 260 La. 277, 255 So.2d 768 (La.1971); Zager v. Allstate Ins. Co., 211 So.2d 744 (La.App. 3rd Cir.1968), he faces a high duty to exercise extreme care to avoid a collision with those on the favored thoroughfare, Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App. 2d Cir.1986); Holland v. United States Fidelity and Guaranty Co., 131 So.2d 574 (La.App. 2d Cir.1961); Wells v. Allstate Ins. Co., 510 So.2d 763 (La.App. 1st Cir. 1987).
A driver desiring to pass upon the left of a vehicle proceeding in the same direction shall not do so until he ascertains the way is clear and oncoming traffic is a sufficient distance ahead to allow his passing maneuver to be made without interfering with the safe operation of approaching vehicles. LSA-R.S. 32:75. However, once a motorist has thus lawfully entered the passing lane, he is not required to anticipate that a vehicle emerging from a private drive will be driven into the path of favored traffic on the roadway. See Josey v. Granite State Fire Ins. Co., 122 So.2d 303 (La.App. 2d Cir.1960). See also Vidrine v. Simoneaux, 145 So.2d 400 (La.App. 3rd Cir.1962). Toward the intruding vehicle, then, the lawfully proceeding driver is under a duty of ordinary care to avoid an impending accident only in those circumstances where speed, control, time, and distance afford him a reasonable opportunity to do so. The burden of proving those circumstances is upon the intruding driver.
*934 McGee v. Miears, 516 So.2d 1241 (La.App. 2d Cir.1987); Davis v. Galilee, supra.
Of course, a trial court's finding of fact may not be set aside on appeal in the absence of manifest error or clear wrongness, and where there is conflict in the testimony, reasonable inferences of fact should not be disturbed on review. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978), on remand, 370 So.2d 1262, (La.App. 3rd Cir.1979), writ denied, 374 So.2d 660 (La.1979). If the trial court's findings are reasonable in light of the entire record, an appellate court may not reverse, and a factfinder's choice between two permissible views of the evidence cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Only one witness, Trooper Brittain, testified in person at the trial. Deposition transcripts were submitted in lieu of live testimony by all other witnesses. However, the manifest error standard applies even when the evidence before the trier of fact consists solely of written reports, records and depositions. Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987).
The record suggests that defendant's wife and son, who were passengers in his car, had no knowledge of the cause of the collision. Other than the parties themselves, only Bonnie and James LeBrun testified as to the events leading up to the accident.
Plaintiff maintains the LeBruns' testimony substantiates her version as to how the accident occurred. We disagree. Plaintiff claims she looked to her left, then to her right before entering the highway. Mrs. LeBrun specifically denied observing plaintiff look in a westerly direction for oncoming traffic prior to pulling onto the highway, and further testified that they both were looking back at Mr. LeBrun when plaintiff started out of the driveway. Mr. LeBrun denied seeing plaintiff look either way before she pulled onto the highway. Indeed, he recalled that the two women were laughing and then plaintiff "just pulled out."
Nor does the physical evidence support plaintiff's account of the accident. Plaintiff testified the cars hit head-on, rearing up like two bulls ramming each other, resulting in damage across the front of each vehicle. Mr. LeBrun also stated the automobiles hit head-on, causing both front ends to be "mashed back" all the way across the front.
Pictures submitted into evidence, however, reveal extensive damage to the left front section of defendant's vehicle, but the right headlight is undamaged. The front of plaintiff's automobile is crushed to the left from the driver's perspective, and the front bumper and grill are missing, as though the collision occurred from an angle. Further, Trooper Brittain testified that, based on the nature of the damage to plaintiff's auto, it apparently had been struck at an angle, not head-on.
The trial court obviously accepted defendant's version as to how the accident transpired, which was supported by the factual testimony of the trooper. After carefully reviewing the testimony and photographs, we cannot deem the trial court to be clearly wrong.

Assignment of Error No. 2
Plaintiff next contends that the trial court erred in failing to allow expert witnesses retained by both parties to testify at trial.
A February 13, 1989 order fixed trial for April 10, 1989, and the case was subsequently so tried. By interrogatories filed on December 14, 1987, defendant had sought the name and address of each expert witness that plaintiff "may or will call" at trial. Plaintiff's answers, filed on January 4, 1988, only listed her physician, Dr. Webb, as an expert. Plaintiff did not, in turn, seek information by interrogatories as to any expert witnesses defendant planned on calling at trial.
According to the record, defense counsel was not advised of plaintiff's intent to call an expert in accident reconstruction until the night before trial. Yet, both parties appeared for trial, accompanied by an expert witness. After initially agreeing to allow them to testify, the judge upon reflection *935 changed his mind and refused testimony by either expert due to the untimeliness of the notification to defendant.
LSA-C.C.P. Art. 1428(1) imposes a duty upon a party to seasonably supplement his response to a discovery question requesting the identity of a person expected to be called as an expert witness. Pursuant to LSA-C.C.P. Art. 1473, for failure to comply with a discovery request, the court may impose certain sanctions authorized by LSA-C.C.P. Art. 1471,[1] including prohibiting a party from introducing designated matters into evidence. Whether or not to allow the testimony of witnesses who have not been identified in response to interrogatories is within the discretionary sphere of the trial court, Johnson v. Petit, 236 So.2d 304 (La.App. 4th Cir.1970), and reversal will occur only if an abuse of discretion is discovered on appeal, Buxton v. Evans, 478 So.2d 736 (La.App. 3rd Cir.1985). Considering the extended period during which plaintiff had the opportunity to retain an expert and notify defendant of his identity, we cannot say the trial court abused its much discretion.

Assignment of Error No. 3
Plaintiff finally asserts that the trial court, despite refusing to qualify the investigating officer as an accident reconstruction expert, erroneously gave great weight to his opinion testimony.
During trial, the judge asked Trooper Brittain for his opinion as to what caused the accident. The officer then responded that plaintiff initiated the accident. After the statement had been made, counsel for plaintiff objected to the trooper expressing an opinion and questioned him further in an effort to refute it. At the conclusion of plaintiff's questioning, defendant attempted to qualify the witness as an expert in accident reconstruction. The judge declined to accept the officer as such, but stated that, "any road trooper that's worked as long as he has knows what causes an accident. And I'm certainly going to give his opinion weight, I'll state that for the record."
After the case was taken under advisement, judgment was rendered in favor of the defendants on April 13, 1989. However, since no reasons for judgment were assigned, we cannot now determine what weight the trial court assigned to the opinion testimony of the trooper. Implicit in the lower court's judgment, of course, is a determination that the Burch vehicle was lawfully in the westbound lane of travel and that plaintiff entered the highway at a time when defendant could not avoid the accident. That considered, we decline to rule upon the appropriateness of the trooper's opinion testimony, inasmuch as we conclude that the record otherwise contains a factual basis to support the trial court's decision. See Prince v. Travelers Insurance Company, 320 So.2d 227 (La.App. 3rd Cir.1975); Naquin v. Maryland Casualty Co., 311 So.2d 48 (La.App. 3rd Cir.1975), writ denied, 313 So.2d 598 (La.1975).

CONCLUSION
Finding no manifest error or abuse of discretion, the judgment of the trial court is affirmed. All costs are to be borne by appellants.
AFFIRMED.
NOTES
[1] LSA-C.C.P. Art. 1471, in substance, reproduces former LSA-C.C.P. Art. 1513, which was interpreted in Johnson v. Petit, supra.