11 SEXTON, Judge.
Plaintiffs, Robert and Vicki Maranto, filed suit against defendants, Goodyear Tire and Rubber Company (“Goodyear”) and Goodyear’s insurer, Traveler’s Insurance Company (“Travelers”), seeking damages for injuries arising out of an automobile accident. The trial court found that defendant, Goodyear, was at fault in causing the accident and *168 awarded damages to plaintiff, Vicki Maranto. It is from this damage award that plaintiffs appeal. We affirm.
On August 25, 1989, plaintiff, Vicki Maran-to, was operating a 1985 Chevrolet Suburban owned by her husband, Robert Maranto, heading south on Hearne Avenue in Shreveport, Louisiana. While traveling through the intersection of Hearne Avenue and Greenwood Road, plaintiff’s vehicle was struck on the driver’s side by a 1983 Lincoln Mark IV automobile owned by J. Lane Company and operated by Thelma Estes, an employee. The Mark IV was traveling north on Hearne Avenue and was stopped waiting to turn left on Greenwood Road when struck from the rear by a 1988 Plymouth van, causing the Mark IV to cross into the southbound lane of Hearne Avenue and strike Mrs. Maranto’s vehicle. The van was owned by Goodyear and operated by Robert Emerson, an employee of Goodyear.
Plaintiffs filed suit against several defendants, including Goodyear and Travelers. A bifurcated trial was held, with the issues of liability and damages being tried separately. The trial court found the defendants, Goodyear and Travelers, were solely hable for the August 25, 1989, accident. Based upon the medical testimony and facts presented primarily through the two orthopedic surgeons, the trial court found that the preponderance of the evidence did not support plaintiffs assertion that^her disc injury was related to the accident. The judge noted that Mrs. Maranto worked full-time after the accident and had a delayed onset of pain. Based on its finding that the accident and disc injury were not related, the trial court found that Mrs. Maranto’s chronic major depression was a result of her disc injury and not the automobile accident and was thus not compensa-ble. General damages in the amount of $3,000 were awarded to Mrs. Maranto to compensate her for soft tissue injuries caused by the accident along with medical expenses for her visits to an internist. It is' from this judgment that plaintiffs appeal.
Appellants assert the trial court committed manifest error by failing to recognize and apply the jurisprudential presumption of pri-ma facia causality pertaining to accidents and resulting disabilities. Appellants also assert the trial court erred in concluding Mrs. Mar-anto failed to meet her required burden of proof and that defendants met their burden of proof.
An appellate court may not set aside a finding of fact made by a judge or jury in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Nejame v. Hamiter, 614 So.2d 848 (La.App.2d Cir.1993).
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the complained-of injuries. American Motorist Insurance Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991). The test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved, through medical testimony, that it was more probable than not that the subsequent injuries were caused by the trauma suffered in 13the accident. Starnes v. Caddo Parish School Board, 598 So.2d 472 (La.App.2d Cir.1992).
A claimant’s disability is presumed to have resulted from an accident if, before the accident, the injured person was in good health but, commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973 (La.1991); Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977); Coley v. State of Louisiana, Through the Department of Transportation and Development, 621 So.2d 41 (La.App.2d Cir.1993); Durkee v. City of Shreveport, 587 So.2d 722 (La.App.2d Cir.1991), writ denied, 590 So.2d 68 (La.1991); Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App.2d Cir.1986).
To overcome the presumption, the defendant must show some other particular incident could have caused the injury in question. Davis v. Galilee Baptist Church, supra.
*169 Appellants argue the trial court committed manifest error by failing to apply this presumption of prima facia causality to their benefit. We find the presumption is inapplicable to these facts.
For the presumption to apply, the symptoms of the disabling condition must appear shortly after the accident and continuously manifest themselves. Further, the medical evidence must show that a reasonable possibility of causal connection exists between the accident and the disabling condition. Based on the evidence presented at trial, in addition to the deposition testimony given previously by Mrs. Maranto, the trial court concluded the symptoms related to the herniated disc did not appear |4shortly after the accident. The court also concluded the medical evidence failed to show a reasonable possibility of causal connection existed between the accident and the herniated disc.
The following evidence was presented at trial. At the time of the accident, Mrs. Mar-anto was employed as a home health care nurse on a part-time basis with Group Health Services. Since her youngest children had started school, she was planning to return to work on a full-time basis. Plaintiff recalls the accident and remembers hitting her shoulder and ribs on the seat belt. Following the accident, she was emotionally shaken and plagued by general aches and pains. The day after the accident, which was a Saturday, Mrs. Maranto had responded to only one call for which she was unable to obtain coverage. Except for this call, Mrs. Maranto stayed home and rested the weekend following the accident.
Mrs. Maranto visited her internist, Dr. William S. Hunt, on the Monday after the accident, complaining about her nerves and, allegedly, her general aches and pains. Dr. Hunt prescribed Xanax, a central nervous system depressant, for nervousness. Mrs. Maranto continued to take Nuprin for pain and discomfort. She did not return to work until September 1, 1989, one week after the accident. From September 5th through October 17th, Mrs. Maranto worked full-time for Group Health Services. According to Mrs. Maranto, her job did not require her to do any bending, stooping, lifting, or climbing. However, Mrs. Maranto admitted that she carried I.V. equipment and bilirubin lights to and from the patients’ homes and was required to bend and stoop while treating those patients.
At trial, Mrs. Maranto claimed she began experiencing back pain immediately after the accident and that the pain progressively worsened. Yet, she was still Rabie to perform all of her job duties. In mid-September, Mrs. Maranto’s home health care nursing duties required her to make several trips to Haughton, Louisiana, to care for patients. After each trip, she would place heat on her lower back and rest. Mrs. Maranto claims it was at this time that her general aches and pains localized in her lower back. Mrs. Mar-anto testified that this lower back pain became severe around October 11, 1989.
Around October 9th, Mrs. Maranto began experiencing pain in her right leg and hip. Dr. Hunt approved an injection of cortisone but this did little to alleviate Mrs. Maranto’s pain. As a result, she consulted Dr. Carl G. Goodman, an orthopedic surgeon, on October 17, 1989. After the examination, Dr. Goodman implemented a conservative course of treatment. Plaintiffs pain increased, and after an MRI revealed a ruptured disc at the L-5, S — 1 area, Dr. Goodman surgically removed the disc on October 22, 1989.
On cross-examination, plaintiff stated that she had disc surgery previously in 1975, but noted that after this surgery, she experienced no further back problems until after the August 1989 automobile accident. The October 1989 back surgery did not relieve any of her pain, which Mrs. Maranto claims has progressively worsened.
Mrs. Maranto testified that she has been depressed since the accident. She consulted Dr. Joe Ben Hayes, a psychiatrist, who diagnosed her condition as chronic major depression and related this depression to the injuries sustained by Mrs. Maranto in the automobile accident.
Dr. Goodman first saw Mrs. Maranto on October 17, 1989. At that time, plaintiff related to him that she was experiencing right leg pain. Plaintiff related to Dr. Goodman that the onset of this leg pain was *170 approximately nine days earlier. His exami-. nation revealed that Mrs. | ¡¡Maranto had spasms and tenderness in her low back area, weakness in her right foot muscles and a decrease in sensation in her right leg and foot. The X-rays showed degenerative disc disease at L-4, L-5, with moderate scoliosis. Mrs. Maranto called him two days later complaining of increased pain. An MRI was conducted followed by a discectomy to remove the disc material causing plaintiffs problems. Dr. Goodman saw Mrs. Maranto periodically thereafter and noted progressive improvement in her condition. However, in April 1990, plaintiff had recurring problems. In October 1991, Dr. Goodman diagnosed Mrs. Maranto with chronic lumbar disc disease. According to the doctor, Mrs. Maranto had reached maximum medical recovery and her condition was permanent.
At trial, plaintiffs’ attorney posed a hypothetical situation to Dr. Goodman. This hy-pothet assumed that plaintiff began experiencing general aches and pain within a few hours after the accident, continually had some degree of lower back pain from the time of the accident, and noticed that the pain was specifically localized in mid-September after driving to visit her patients. Also, this hypothetical assumed that Mrs. Maranto had no other intervening accidents or incidents between the automobile accident and disc surgery and that plaintiffs employment did not require any lifting or bathing of patients during this time period. Based on this hypothetical, Dr. Goodman asserted that Mrs. Maranto’s disc injury was more probably than not related to trauma sustained in the automobile accident.
Defense counsel also posed a hypothetical to Dr. Goodman. In this hypothetical, Dr. Goodman was asked to assume Mrs. Maranto did not experience the onset of pain until six weeks after the accident, visited one patient Ivthe day after the accident, and worked as a home health care nurse from September 1, 1993 through October 17, 1993, the date she first visited Dr. Goodman. Based on this hypothetical, Dr. Goodman could not, more probably than not, relate Mrs. Maranto’s disc problem to the accident.
Plaintiffs treating internist, Dr. Hunt, also testified. He saw Mrs. Maranto on August 29, 1989, four days after the accident. Mrs. Maranto appeared to be nervous and agitated. The doctor’s notes reflect this nervous state. Although Dr. Hunt recalls that Mrs. Maranto told him of general aches and pains, his notes do not reflect such complaints.
An independent medical examination was performed by Dr. Craig Springmeyer, an orthopedic surgeon, on February 17, 1992. An MRI revealed a large disc herniation. Dr. Springmeyer’s orthopedic and neurological exam showed that Mrs. Maranto suffered from decreased sensation on the top and outside of her right foot, consistent with the L-5 findings on the MRI. Generally, his findings were consistent with those of Dr. Goodman. Based on a hypothetical posed by plaintiffs’ counsel, which was similar to the hypothetical posed to Dr. Goodman, Dr. Springmeyer stated that Mrs. Maranto’s disc condition was related to the automobile accident. However, on cross-examination, in response to a hypothetical posed by defense counsel, similar to the one posed to Dr. Goodman, Dr. Springmeyer could not relate Mrs. Maranto’s disc injury to the automobile accident.
Sherry . Campbell, R.N., also testified. Mrs. Maranto became employed on a full-time basis through Ms. Campbell in early September. Previously, Mrs. Maranto had worked for Group Health Services on a part-time basis since 1987. Mrs. Campbell saw plaintiff on a daily basis ^following the accident and observed no injuries or disabilities. Ms. Campbell also testified Mrs. Maranto had no work restrictions other than those constraints placed upon her by her family and the schedules of her children. Further, Ms. Campbell noted no complaints were made by Mrs. Maranto as a result of the accident except that of some soreness from the accident.
The fact Mrs. Maranto was in good health prior to the accident is uncontroverted as is the fact she began experiencing leg and hip pain approximately six weeks after the accident. There is a discrepancy between Mrs. Maranto’s testimony at trial and her deposition which was taken prior to trial regarding *171 the onset of her physical pain. At trial, Mrs. Maranto testified she began suffering from general aches and pains, including back pain, from the date of the automobile accident in August 1989. Plaintiff also testified this pain continued and progressively worsened until it localized in the area of her lower back around the middle of September. To the contrary, Mrs. Maranto’s deposition testimony was that she suffered no physical injury in the accident except the possible bruising of her ribs from the' seat belt. She also testified in her deposition that the first onset of any back pain after the accident was in early to mid-October. She related this onset of back pain to driving long distances to Haugh-ton, Louisiana, to care for patients.
Furthermore, Dr. Goodman testified that Mrs. Maranto had reported to him that the first onset of back pain was when she started driving to visit a patient in Haughton, Louisiana.
The trial judge made a factual finding that the appellants failed to prove more probably than not that the accident caused the herniation of Mrs. Maranto’s disc. In preaching this finding, the trial court relied on the testimony presented at trial and Mrs. Maran-to’s deposition testimony. The court specifically noted the discrepancies between Mrs. Maranto’s testimony in her deposition and at trial regarding when the onset of back pain occurred. The trial court also found the hypotheticals presented to the orthopedic surgeons by defense counsel were correctly based on facts in the record.
Mrs. Maranto’s testimony regarding when her back pain set in changed dramatically and to her benefit between the time of her deposition testimony and her trial testimony. Additionally, Dr. Goodman’s notes reflected Mrs. Maranto had reported that her pain did not result from the prior automobile accident. Yet, at trial, Mrs. Maranto testified the pain in her back originated with the accident and continually worsened.
When presented with the hypothetical posed by plaintiffs’ counsel, both orthopedic surgeons testified that it was more probable than not that Mrs. Maranto’s disc injury was caused by the automobile accident. However, the trial judge found this hypothetical was not based on the actual history and facts of this case. Rather, the trial judge found the hypothetical posed by defendants’ counsel was the accurate depiction of the history and facts. In response to this hypothetical, both orthopedic surgeons testified they could not state more probably than not that the accident caused her herniated disc.
Opinion evidence must be based on facts. Davis v. Galilee Baptist Church, supra. The trial court chose to give more weight to the opinion evidence elicited from the orthopedic surgeons by defense counsel’s hypotheticals since it found these hypotheti-cals were based on a correct rendition of the facts. In light of the great weight that | ipmust be given to factual findings of a trial court, we cannot say this finding was manifestly erroneous.
Thus, we cannot find the trial court committed manifest error by failing to apply the presumption of prima facia causality nor by finding plaintiffs failed to meet their required burden of proof regarding plaintiffs’ claim for extensive damages. This conclusion moots plaintiffs’ other contentions. Accordingly, the judgment of the trial court is affirmed at plaintiffs’ costs.
AFFIRMED.
BROWN, J., dissents with reasons.