KING, Judge.
The issues presented by this appeal are whether or not the trial court erred in finding that the defendants failed to prove that they or their ancestors-in-title acquired the property in dispute by acquisitive prescription, and in making an award of $2,500.00 to the plaintiff’s expert surveyor, in excess of his expert witness fee, for work performed in connection with preparation for trial.
John A. LeBlanc brought a petitory action against the defendants to be declared the owner of a tract of land of which the defendants were in possession. The defendants filed an answer alleging that they were the owners of the property. This suit was consolidated for trial with another pet-itory action involving a contiguous tract of land, the ownership of which was claimed by Aaron Duhon, in possession of one of these defendants and other defendants.[1] *1057 These suits remain consolidated on appeal. As the facts and law in this appeal are relevant to the consolidated case on appeal they will be discussed herein and a separate judgment will be rendered in the consolidated case on appeal. See Duhon v. Andrew, 497 So.2d 1066 (La.App. 3 Cir.1986). After a trial on the merits, the trial court rendered judgment in favor of John A. LeBlanc, as prayed for, and partially in favor of Aaron LeBlanc. The defendants in both suits appeal. We affirm.
FACTS
On July 12, 1983, John A. LeBlanc (hereinafter referred to as LeBlanc) filed suit against defendants, Leonard Andrew, Adam Andrew, Jr., and Andris Sinegal, Jr. (hereinafter referred to as defendants), alleging that he was the owner of a tract of land (hereinafter sometimes referred to as Tract A) located in Lafayette Parish, Louisiana and described as follows:
“That certain tract of land located in Section 34 of Township 10 South, Range 3 East, of Lafayette Parish, Louisiana, having a northerly side of 552.15 feet, an easterly side of 50 feet, a southerly side of 532.63 feet, and a westerly side of 58 feet. Said parcel of land is bounded on the north by the property of Andris Sine-gal, Jr., et al, on the east by the property of Aaron Duhon, on the south by other property of John LeBlanc, and on the west by other property of John LeBlanc. Being a portion of the property acquired by John A. LeBlanc by cash deed dated March 26, 1982, recorded under Entry Number 82-010949 of the Conveyance Records of Lafayette Parish.” •
While admitting that the defendants were in possession of Tract A, LeBlanc sought to be recognized as the legal owner of Tract A and to have the defendants ordered to surrender possession of this property to him.
An answer was filed to LeBlanc’s suit on behalf of the defendants admitting possession and claiming to be the owners of Tract A sought by LeBlanc. The defendants in LeBlanc’s suit are brothers, except for An-dris Sinegal, Jr., who is a nephew of the other defendants.
On July 12, 1983, Aaron Duhon (hereinafter referred to as Duhon) filed suit against defendants, Leonard Andrew, Patricia Andrew (Gabriel), and Annabelle Andrew (Francis) (hereinafter referred to as defendants), alleging that he was the owner of a tract of land (hereinafter sometimes referred to as Tract B) located in Lafayette Parish and described as follows:
“That certain tract or parcel of land located in Section 34 of Township 10 South, Range 3 East, of Lafayette Parish, Louisiana, measuring approximately fifty (50) feet on the easterly and westerly side, and 779.93 feet on the northerly and southerly side. Said parcel of land is bounded on the north by the property of the defendants herein, on the east by the easterly half of the C. Bourque Road, on the south by other property of petitioner, and on the west by the property of John LeBlanc.
Being a portion of the property acquired by Aaron Duhon by cash deed dated April 13, 1982, recorded under Entry Number 82-01039 of the Conveyance Records of Lafayette Parish.”
In his petition, while admitting that the defendants were in possession of Tract B, Duhon sought recognition as the legal owner of Tract B and to have the defendants ordered to surrender possession of this property to him.
An answer was filed to Duhon’s suit on behalf of the defendants who admitted possession and claimed to be the owners of Tract B sought by Duhon. The defendants in Duhon’s suit are all related.
The trial began on April 17, 1984. During the trial, both sides presented a land surveyor, each of whom the court accepted as an expert witness, in addition to other witnesses. The testimony concluded on April 19,1984, at which time the trial judge took the case under advisement.
*1058 The trial judge rendered written Reasons For Judgment on May 17, 1984, granting judgment in favor of LeBlanc as prayed for recognizing him as owner of all the property which he claimed. Judgment was also rendered recognizing Duhon as owner of part of the property which he claimed. In addition to the fixing of expert witness fees for the surveyors, the trial judge fixed and taxed the sum of $2,500.00 as court costs for the work done by the plaintiffs’ expert surveyor in preparation for trial.
Judgments were signed in each suit on June 6, 1984. From these judgments, all defendants suspensively appeal and argue that the trial judge erred in (1) failing to consider the testimony in support of their position that Clady Harmon, defendants’ ancestor-in-title, had a deed translative of title to Tract A and Tract B, the properties in dispute, and that they acquired title by ten (10) year and thirty (30) year acquisitive prescription, since plaintiffs’ ancestors-in-title never had possession of the properties in dispute; and (2) awarding a fee of $2,500.00 to the plaintiffs’ expert surveyor for work done in preparation of trial.
RECORD TITLE
To more fully understand the legal issues between the plaintiffs and the defendants it is necessary to briefly describe the record titles of the parties, from their common ancestor-in-title. The common ancestor-in-title of all parties was Fred Voorhies who acquired the property in dispute from Noah Harmon. Mr. Voorhies originally acquired and owned the property now claimed by the plaintiffs and defendants, except for a ten acre tract in the southeast corner, with the southern boundary of his property being the east-west quarter section line between the northwest quarter and the southwest quarter of Section 34, Township 10 South, Range 3 East, Lafayette Parish, Louisiana. On January 22, 1927, Fred Voorhies sold to the Hunter Canal Company the following described property located in Lafayette Parish, Louisiana, to-wit:
“One certain strip of land, situated in the Parish of Lafayette, Louisiana; measuring fifty (50) feet North and South by about 5 and 25/100 (5.25) arpents, east and west, in length; taken off of and along the South end of donor’s land located in the Southern portion of the Southeast Quarter of the Northwest Quarter (SE1/4 of NW1/4) of Section Thirty-four (34), Township Ten (10), South, Range Three (3), East, Louisiana Meridian; which strip of land herein conveyed is bounded North by the donor herein, South by Alexis LeBlanc and Polite Normand, East by Ed. Jones and West by the Harmon property.”
This sale to the Hunter Canal Company conveyed a strip of land fifty feet wide off of the south part of Fred Voorhies’ property. However, at the time of this sale, Fred Voorhies did not own a rectangular ten acre tract of property in the southeast corner of his property, which he had not acquired because it had been previously sold by his vendor, Noah Harmon, to Mrs. Mary Jones. In subsequent acts of sale and resale of the property between Fred Voorhies and the Lafayette Building Association, on March 19, 1929, for purpose of the building association obtaining a vendor’s lien and mortgage as security for money loaned by it to Mr. Voorhies, there was made a part of the act of resale a plat which showed the property owned by Mr. Voorhies, after the sale of the fifty (50) foot strip of land on the southern part of his property to the Hunter Canal Company. A copy of the plat contained in that act of resale is set forth as Appendix A to this opinion. The plaintiffs, John A. LeBlanc and Aaron Du-hon, subsequently acquired legal title to this fifty (50) foot strip of land from the successors-in-title of the Hunter Canal Company. Fred Voorhies then sold the remainder of his property to the Lafayette Lumber Company, Inc., which in turn sold it to the Lafayette Real Estate and Investment Company, Inc., which in turn then sold the property by deed to Clady Harmon, the defendants’ ancestor-in-title, on March 1, 1933. The deed of Clady Harmon, the defendants’ ancestor-in-title, in- *1059 eluded record title to Tract A and Tract B, the properties in dispute, which is the fifty (50) foot wide strip of land running east and west at the south end of the properties now owned by the defendants.
The Hunter Canal Company also acquired an additional fifty (50) foot right-of-way from contiguous property owners south of the strip of land the Hunter Canal Company had acquired from Fred Voor-hies, and constructed a canal in this one hundred (100) foot right-of-way which was used for many years. The canal was later filled in and levelled. The exact location of the canal when it was in existence, within the one hundred (100) foot right-of-way owned by the Hunter Canal Company and its successors-in-title, presented one of the issues of fact to be resolved by the trial court.
As LeBlanc and Duhon admitted in their petitions that defendants were in possession of Tract A and Tract B, the applicable law to prove title is as set forth by this Court in Sanders v. Williams, 434 So.2d 172 (La.App. 3 Cir.1983), writ den., 440 So.2d 759 (La.1983), which is that
“[Plaintiffs’ burden of proof is as provided in LSA-C.C. art. 531 which states in part:
‘One who claims the ownership of an immovable against another in possession must prove that he has acquired ownership from a previous owner or by acquisitive prescription.’
and LSA-C.C.P. art. 3653 which states in part:
‘To obtain a judgment recognizing his ownership of immovable property or real right therein, the plaintiff in a petitory action shall:
(1) Prove that he has acquired ownership from a previous owner or by acquisitive prescription, if the court finds that the defendant is in possession thereof ...’” Sanders v. Williams, 434 So.2d 172, at pages 175-176 (La.App. 3 Cir.1983), writ den., 440 So.2d 759 (La.1983).
In other words, LeBlanc and Duhon had to establish a record title good against the world without regard to the title of defendants. Pure Oil Company v. Skinner, 294 So.2d 797 (La.1974); Weaver v. Hailey, 416 So.2d 311 (La.App. 3 Cir.1982), writ not considered, 420 So.2d 159 (La.1982).
Defendants do not argue that LeBlanc and Duhon did not prove that they “acquired ownership from a previous owner”, which satisfies their burden of proof required by LSA-C.C. Art. 531 and LSA-C. C.P. Art. 3653, as to all of Tract A claimed by LeBlanc and as to part of Tract B claimed by Duhon. We have nevertheless reviewed the evidence presented by Le-Blanc and Duhon and confirm the correctness of the trial court’s finding of fact that LeBlanc did prove his record title to all of Tract A and that Duhon did prove his record title to part of Tract B through the establishment of a valid chain of title.[2] Duhon has not appealed the trial court judgment finding that he only proved record title to a portion of Tract B, with the defendants, Patricia Andrew (Gabriel) and Annabelle Andrew (Francis), being recognized as the owners of record title to the remainder of Tract B, and this issue is not now before this Court on the appeal of the defendants in the consolidated case.
ACQUISITIVE PRESCRIPTION
What defendants do contend is that they and their ancestor-in-title acquired Tract A and Tract B by 10 year acquisitive prescription, or, in the alternative, by 30 year acquisitive prescription. More specifically, defendants contend that their ancestor-in-title, Clady Harmon, purchased the properties in dispute in good faith by a deed translative of title dated March 1, 1933. *1060 Defendants introduced into evidence the documents establishing their chain of title to the properties in dispute, including a document of sale of a tract of land from Lafayette Real Estate Investment Co., Inc. to Clady Harmon, dated March 1, 1933, showing the property sold to him as being located in Lafayette Parish, Louisiana and described as:
“That certain tract of land situated in the Second Ward of the Parish of Lafayette, Louisiana, containing twenty-nine (29) acres, more or less, bounded on the north by land of Jackson Wiatt or assigns; on the south by land of John Comeaux or assigns; on the east by land of Polite Normand and Bico Broussard, and on the West by land of Noah Harmon; Being the same property acquired by the Lafayette Real Estate and Investment Company Inc., from the Lafayette Lumber Company Inc., in October, 1932, under Act No. 104481, of the Clerk’s Office of this Parish.”
This deed included record title to Tract A and Tract B, the properties in dispute, which is a fifty (50) foot wide strip of land running East and West at the South end of the property purchased by Clady Harmon. It should be noted that the description used in the deed closely follows the plat which was attached to the act of resale by the Lafayette Building Association to Fred Voorhies, the common ancestor-in-title to all parties in this suit.
In reaching a decision in this case, it was necessary for the trial court to accurately determine the location of Tract A and Tract B in relation to the property now owned by the defendants. As the trial judge noted in his Reasons For Judgment:
“The dispute centers upon one question: Exactly what land did the plaintiffs’ ancestors in title, the Hunter Canal Company, purchase from one Fred Voorhies? This company obtained the land in 1927.”
As previously mentioned, both the plaintiffs and defendants employed registered land surveyors, who were accepted by the trial court as expert witnesses. John Wayne Landry, plaintiffs’ expert land surveyor, prepared a plat of survey of the land in dispute and of adjacent property owned not only by the defendants but also by the other land owners in the immediate area. This plat was introduced into evidence by plaintiff. Regarding his preparation of this plat, Mr. Landry testified as follows:
“My first impressions in conducting a survey is to research everything there is about the particular property, as well as all the adjoining property, as well as the section survey lines that are available. And this is what we did in this case. We picked up every piece of information we could possibly come up with about this particular piece of property and the adjoining pieces of property, and you see it there before you, gentlemen, on this map. It’s well referenced. The survey plats we looked up. We used section maps. We used prior survey maps of the area listed. We can produce them. And nothing conflicts.”
A copy of the plat prepared by Mr. Landry, which was attached to and made a part of the trial judge’s written Reasons For Judgment, a portion of that plat being attached as Appendix B to this opinion, placed the northern boundary of the property claimed by plaintiffs’ 50 feet north of the East-West Quarter Section Line (in the southern part of the Southeast quarter of the northwest quarter of Section 34, Township 10 South, Range 3 East, Lafayette Parish, Louisiana) and contiguous to the southern boundaries of the properties now owned by the defendants. The plat also placed the location of the former Hunter Canal right-of-way generally parallel to the East-West Quarter Section Line between the northwest quarter and the southwest quarter of Section 34, with the outer limits of the right-of-way being fifty (50) feet to the north and fifty (50) feet to the south of the East-West Quarter Section Line between the northwest quarter and the southwest quarter of Section 34.[3]
*1061 A plat was also prepared by Calvin Cour-ville under the supervision of A. J. Szabo, defendants’ expert land surveyor, which was introduced into evidence by plaintiff. This plat, which was used for the partition of property between the heirs of Cloreda Hulin, Clady Harmon, Melba Harmon, and Edmonia Harmon, and which shows the location of the properties now owned by each of the defendants, does not contain any section lines and shows the Hunter Canal right-of-way completely south of the properties now owned by the defendants. Mr. Szabo admitted in his testimony that his survey made for this partition was not tied to any section corners, and that he did not personally take any of the measurements used.
By attaching the plat prepared by plaintiffs’ expert surveyor, John Wayne Landry, to his Reasons for Judgment, the trial judge adopted and approved that plat as evidence of the correct location of Tract A and Tract B, the properties in dispute. We agree with the trial judge that it was necessary to determine the location of the land that plaintiffs’ ancestor-in-title, the Hunter Canal Company, purchased from Fred Voorhies. However, locating the property sold by Fred Voorhies to the Hunter Canal Company does not resolve the question of whether defendants and their ancestors-in-title acquired Tract A and Tract B, the properties in dispute, by acquisitive prescription.
Fred Voorhies, prior to the sale of his property, to the Lafayette Lumber Company, Inc., had sold a portion of this same property to the Hunter Canal Company, plaintiffs’ ancestor-in-title, in 1927.
Defendants argue that since there is absolutely no evidence in the record to show that their ancestor-in-title, Clady Harmon, knew of this previous sale from Fred Voor-hies to the Hunter Canal Company, his corporeal possession in good faith of a part of the property in his title served as possession of all of the property in his title, including Tract A and Tract B, the properties in dispute.
The requisites for acquisitive prescription of ten years are (1) possession of ten years, (2) good faith, (3) just title, and (4) a thing susceptible of acquisition by prescription. LSA-C.C. Art. 3475. One who possesses a part of an immovable by virtue of a title is deemed to have constructive possession within the limits of his title. LSA-C.C. Art. 3426. As the plaintiffs did not rebut the presumption of Clady Harmon’s good faith, LSA-C.C. Art. 3481, the defendants could establish ownership of the property by ten year acquisitive prescription by showing that defendants' ancestor-in-title, Clady Harmon possessed Tract A and Tract B, the properties in dispute, actually or constructively.
The record is replete with testimony that Clady Harmon and the defendants possessed parts of the property described in their title. It would seem that Clady Harmon by law constructively possessed all of the property described in his record title, including Tract A and Tract B, the properties in dispute. However, the record is also replete with evidence that the Hunter Canal Company, plaintiff’s ancestor-in-title, also actually possessed Tract A and Tract B, the properties in dispute. The digging of the Hunter Canal and erection of its levees, which all witnesses testified as to the existence of, is certainly possession of Tract A and Tract B, the properties in dispute. However, Annabelle Francis, a defendant in the suit brought by Aaron Duhon, testified that in 1954 or 1955, the Hunter Canal people did something that required her family to move their fence. Defendant, Leonard Andrew, also admitted that his family was required to move their fence on account of the Hunter Canal people. Additionally, Mr. Louis Veronie and Joseph Duhon, witnesses for plaintiffs, testified that it was the policy or custom of the owners of the Hunter Canal Company to allow adjacent landowners to use the *1062 company’s land up to its canal banks or levees.
It is clear that only one party can possess property at a given time.
“When two possessions lap, that which is most perfect and best characterizes the right of property is to be preferred; that which is corporeal and manifested by acts peaceable and notorious, will prevail over that which is merely intentional; the presumption being, that the will to possess ceases when it remains inactive and suffers *an actual adverse possession.” Blanc v. Duplessis, 13 La. 344, at page 338 (Orleans 1839).
See also Roy O. Martin Lumber Co., Inc. v. Lemoine, 381 So.2d 915, 918 (La.App. 3 Cir.1980).
Since we find that there is ample evidence that the Hunter Canal Company actually possessed Tract A and Tract B, the properties in dispute, through the digging and use of its canal and the erection of its levees, we do not find that the trial judge was clearly wrong or manifestly in error in finding that Clady Harmon did not constructively possess the property for purposes of ten year acquisitive prescription.
Defendants also argue that they and their ancestors-in-title, Clady Harmon, actually possessed the property in dispute for purposes of gaining ownership of the property by thirty year acquisitive prescription. Annabelle Francis and Leonard Andrew both testified that their ancestor-in-title, Clady Harmon, enclosed their property by placing a fence along the Hunter Canal levee, approximately six or seven feet north of an old pre-existing fence. Annabelle Francis further testified that her grandfather farmed cotton all the way to the fence, except for a small area used as a turn row.
To the contrary, there was also evidence that the properties in dispute were overgrown with brush and were never farmed. Mrs. Rhea Broussard, a witness for the defendants, testified that the area alongside the canal was covered with “chero-kees.” Mrs. Boudreaux, another witness for the defendants, testified that the chero-kees extended about thirty (30) feet north of the canal.
Also, although plaintiffs allege that there was no fence along the Hunter Canal on the properties in dispute, they further contend that even if defendants did have a fence along the levee, it was not adverse to the ownership of the Hunter Canal Company in view of its policy of allowing adjacent property owners to use their property up to the canal banks and levees. Mr. Joseph Duhon, who also owned property along the Hunter Canal, testified as follows regarding the policy of the Hunter Canal Company to let neighboring landowners use the company’s property:
“They would let you put a fence on both sides of the canal, all right? But you had to leave a gate on both levees, on both — on this end and the other end so the water boss could pass. You had to put a gate. But you could fence the canal to have it cleaned up by your cows.”
Mr. Joseph Duhon further testified that the reason why the Hunter Canal Company allowed use of their property by neighboring landowners was to keep the property clean.
The possession required for acquisitive prescription of ten years or thirty years must be continuous, uninterrupted, peaceable, public and unequivocal. Former LSA-C.C. Arts. 3477 and 3500. (These articles are now found as LSA-C.C. Arts. 3435, 3436, 3476, and 3486.) To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing. Former LSA-C.C. Art. 3424. (This article is now found as LSA-C.C. Arts. 3421 and 3424.)
In his Reasons for Judgment, the trial judge stated: *1063 We find that the trial court’s finding of fact regarding defendants’ lack of possession necessary to acquire ownership of Tract A and Tract B, the properties in dispute, by acquisitive prescription, is not manifestly erroneous or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
*1062 “The Court finds, however, that the defendants have failed to show by a preponderance of the evidence that they have accomplished the possession necessary to have acquired ownership by either the ten (10) year or thirty (30) year prescriptions.”
*1063 EXPERT FEES
The trial judge fixed expert witness fees ($600.00 for Mr. Landry’s two days in court, and $300.00 for Mr. Szabo’s one day in court) and taxed them as court costs. The trial judge also fixed an additional $2,500.00 to be taxed as court costs for work done by Mr. Landry in preparation for trial, referring to a bill submitted by Mr. Landry which was introduced into evidence by the plaintiffs. No bill for such services was submitted on behalf of Mr. Szabo. The defendants argue that the trial court erred in awarding an additional expert fee of $2,500.00 to Mr. Landry because he performed his surveying work as early as six months before the plaintiffs filed suit. The defendants alternatively argue that this court should reduce the award of $2,500.00.[4]
The compensation of expert witnesses is provided for in LSA-R.S. 13:3666, which provides in part:
“A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.
B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment ...” (Emphasis added.)
The amount of expert fees is a matter within the discretion of the trial court and should not be disturbed unless found to be manifestly erroneous. Ditch v. Finkel-stein, 399 So.2d 1216 (La.App. 1 Cir.1981); Reliable Rubber & Plastic Machinery Co., Inc. v. Wirt Mfg., Inc., 420 So.2d 1232 (La.App. 3 Cir.1982).
The trial judge heard Mr. Landry testify as to the amount of work that was done in preparing the survey plat, including research of the records of the Clerk of Court’s office and a physical search of historical markers in the area of dispute. Mr. Landry’s testimony was based entirely on this work performed at the request of the plaintiffs. The trial court found that his survey was accurate and accepted it for the purpose of resolving this litigation. We conclude that the trial court’s award of an additional $2,500.00 as expert witness fees, for the work performed in connection with preparation for trial by Mr. Landry, the plaintiff’s expert witness, and the taxing of this fee as court cost is not manifestly erroneous or clearly wrong.
For the reasons assigned above, the judgment of the trial court is affirmed at defendants-appellants’ costs.
AFFIRMED.
*1064 APPENDIX A
[[Image here]]
*1065 [[Image here]]
APPENDIX B

. The consolidated suit is captioned Aaron Du-hon v. Leonard Andrew, Patricia Andrew (Gabriel), and Annabelle Andrew (Francis), 497 So.2d 1066 bearing Number 834,211 on the Docket of the Fifteenth Judicial District Court and bearing Docket Number 84-968 on the Docket of the Third Circuit, Louisiana Court of Appeal. Aaron Duhon, the plaintiff in the consolidated suit, brought his petitory action against Leonard Andrew, Patricia Andrew (Gabriel) and Annabelle Andrew (Francis), alleging his ownership of a tract of property, contiguous to and east of the tract of property of which plaintiff, John LeBlanc, claims ownership. Du-hon also admitted in his petition that the defendants were in possession of the property he was claiming. LeBlanc and Duhon have the *1057 same immediate author-in-title to their respective properties.

. LeBlanc and Duhon introduced into evidence ■ a series of documents which established their chain of title back to the sovereign. Moreover, since the plaintiffs and defendants have a common author-in-title, Mr. Fred Voorhies, plaintiffs had the opportunity to take advantage of the common-author rule of LSA-C.C. Art. 532 which provides that:
"When the titles of the parties are traced to a common author, he is presumed to be the previous owner.”

. The Hunter Canal is no longer in existence. Plaintiff, John LeBIanc, testified that persons who bought the Hunter Canal property individually levelled and filled in their respective por *1061 tion of the canal. LeBlanc stated that he le-velled and filled his portion of the canal on April 26, 1982, while Duhon stated he levelled and filled his portion of the canal a few days later.

. Mr. Landry’s expert fee of $2,500.00, which was assessed as a court cost by the trial court, is for work performed on behalf of John A. Le-Blanc and on behalf of Aaron Duhon, the plaintiff in the consolidated suit. Therefore, a portion of the $2,500.00 fee is in fact a court cost of the consolidated suit.