516 So.2d 1241 (1987)
Glen Warren McGEE, Plaintiff-Appellee,
v.
Ellis E. MIEARS, et al., Defendants-Appellants.
HOLLINGSWORTH CONSTRUCTION CO., INC., et al., Plaintiff-Appellant,
v.
Glen Warren McGEE, Defendant-Appellee.
Nos. 19151-CA, 19152-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1987.
Rehearing Denied January 14, 1988.
Cook, Yancey, King & Galloway by Sidney E. Cook, Jr., for plaintiffs-appellants, Ellis E. Miears, Hollingsworth Constn. Co. and Aetna Cas.
Burnett, Sutton & Walker by Bobby D. Sutton, Jr., and Bobby D. Sutton, for defendant-appellee, Glen Warren McGee.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
In consolidated actions tried by jury that arose out of a collision between a car and a truck, the truck driver, his employer, and liability insurer, appeal a judgment finding the truck driver wholly at fault and awarding the car driver $50,000 general damages.
*1242 Appellants did not appeal the rejection of their demands against the car driver in the consolidated action, but complain in this appeal that the jury was clearly wrong in assessing fault and abused its discretion by awarding $50,000 general damages. Appellants also complain that the evidence does not support or justify the expert witness fees assessed against them and seek to reduce these fees.
Finding no error or abuse of discretion by the judge or the jury, we affirm.

FACTS
The car and the truck, both traveling about 50 mph, were approaching each other on U.S. Hwy. 84 near Mansfield on a rainy daylight morning. At the accident scene, Hwy. 84 is a two-lane, straight and level, highway, proceeding easterly and westerly. The evidence conflicted whether the collision occurred in the car's westbound lane or in the truck's eastbound lane.
Allocation of fault under CC Art. 2323 is a factual finding which is not disturbed on appeal unless, for well-articulated reasons, the allocation is found to be clearly wrong. This standard of review applies even though different juries or jurors may dissimilarly assess fault for the same or similar conduct. Towns v. Georgia Cas. & Sur. Co., 459 So.2d 124 (La.App.2d Cir. 1984).
In this case, nine jurors concurred in the allocation of fault and three did not. The jury verdict is legally sufficient and we accord it the same great weight given to all factual findings of any trier of fact. CCP Art. 1797.
Plaintiff McGee was westbound in his 1977 Oldsmobile sedan. Defendant Miears was eastbound in his employer's truck which was loaded with 3,000 gallons of water and which weighed about nine times as much as the Oldsmobile.
The left front of the truck collided with the left side of the car near the front door of the car. The impact sheared off most of the rear-half of the car, bending the remaining part of the car body toward the right side of the car.
After impact the car was found about 240 feet west of the assumed point of impact in the area where debris from the collision was found. The right front wheel of the damaged car, which was still headed west, was on the shoulder and across the painted white line that separated the shoulder from the westbound lane. The eastbound truck was found on its right side several feet north of the westbound shoulder, about 106 feet northeast of the assumed point of impact. Both drivers were immediately hospitalized for their respective injuries.
McGee said he was traveling in his westbound lane when he responded to the truck crossing the center line of the highway and rapidly closing on him. He drove toward and partly on the westbound shoulder, which he said was bordered by a ditch and was not wide enough to allow him to drive completely off the westbound lane. Once on the shoulder, he did not attempt to return his car to the westbound lane and was in this position when the collision occurred. Plaintiff said he did not have time to otherwise react.
One or more photographs taken by a state trooper after the accident showed tire tracks or scuff marks crossing the westbound lane of the highway. This trooper, while otherwise supporting the truck driver's version of the accident, agreed that 90 percent of the debris from the accident was in the westbound lane.
Plaintiff's distant cousin, who was driving eastbound behind the truck, witnessed the accident, not knowing at the time that it was plaintiff's car. She saw the approaching car in its westbound lane before she saw the truck "drifting" towards its left with its inside dual left rear wheels traveling on the center line of the highway. She said the truck crossed the center line at an angle and corroborated plaintiff's driving toward and onto the westbound shoulder. Her description of how and where the collision occurred was essentially as plaintiff said. She said that once the car was partly on the shoulder and partly on the westbound lane it drove back into the westbound lane, but did not at any time *1243 cross the center line. She said that the collision occurred in the westbound lane after the truck crossed the center line.
Two expert witnesses, one on direct and the other as a rebuttal witness, opined that the manner and location in which the vehicles came to rest after impact and the location of the debris and other physical evidence supported their conclusions that the impact occurred in the westbound lane.
The truck driver said that he was in his eastbound lane of travel when the car hit him shortly after he "noticed" the headlights of the car. He said he did not actually see the car enter the eastbound lane, but that the collision "had to happen there" because his truck did not cross the center line. He said he lost control of the truck after impact.
The investigating state trooper opined that physical evidence, including 12 to 18 inch gouge marks found in the asphalt highway five feet south of the center line, showed that impact occurred in the eastbound lane. Plaintiff's expert witness, on rebuttal, suggested that the gouge marks were made, not by plaintiff's car at impact, but after impact, and by one or more parts of the vehicles that were propelled from the vehicles during impact.
Two workers at an oil well near the scene also testified for the truck driver. One said that he saw the collision occur in the eastbound lane. The other, who heard the collision and saw the vehicles afterward when they were "coming apart," said the truck was then on the eastbound shoulder and thereafter went out of control and across the westbound lane and off the roadway north of the westbound lane.
The jury could have believed plaintiff and the witnesses, lay and expert, that supported his version of the accident, notwithstanding the conflicting version of the truck driver and witnesses, lay and expert, that supported the truck driver. When viewed in this light, the jury was not clearly wrong in assessing fault.
A lawfully proceeding motorist who sees or should see an intruding danger may be negligent for failing to use ordinary care to avoid an impending accident only in such circumstances where speed, control, time, and distance would afford that motorist a reasonable opportunity to avoid. The intruding driver has the burden, however, of proving these circumstances by a preponderance of the evidence. Davis v. Galilee Baptist Church, 486 So.2d 1021 (La. App.2d Cir.1986). The jury did not find the truck driver's version credible in this instance and did not allocate any fault to the car driver.
Under the described circumstances, we cannot find the jury's verdict clearly wrong. The jury was entitled to make credibility assessments and to weigh the evidence and find that the truck driver did not prove by a preponderance of the evidence, any comparative fault on the car driver.

QUANTUM
At the DeSoto General Hospital emergency room in Mansfield a general practitioner found that plaintiff sustained injuries that included a laceration of the left arm and a fracture of the left hip. Plaintiff was promptly referred to an orthopedic surgeon in Shreveport.
The orthopedist repaired both the fractured hip and the laceration near plaintiff's left elbow that extended deeply into the arm muscle. Dead or unhealthy skin was removed from the area of the laceration and the remaining skin was pulled together and sutured.
The hip fracture was a comminuted, shatter-type, fracture, rather than a simple fracture. The fracture "involved the hip joint ... where the hip and thigh bone come together." It was described as an "intertrochanteric fracture of the left hip." The surgeon made an incision about 14 inches long and inserted a surgical steel plate across the fracture area by drilling holes into the intact bones and screwing the plate in place. Blood was drained from the fracture site to reduce swelling and tenderness. The incision was closed with four layers of stitches. There were no complications during surgery.
*1244 Plaintiff was hospitalized ten days and was bedridden for more than two weeks at home. His mother and sister cared for him. He used a walker for about three months. The orthopedic surgeon saw him about once a month for four months, monitored his improvement and released him four months after the accident. The doctor described this as normal recovery time.
Plaintiff had pain in his left arm and left leg after the surgery and took prescribed pain medication. His mother testified the pain kept him awake at night while he was bedridden. At trial about two years after the accident, plaintiff was 33 years old. He testified he still had intermittent pain in his leg. He said he sometimes would have to work his leg up and down while sitting on the side of the bed in the morning before he could stand up.
Plaintiff was not employed before the accident, but helped his mother around the house. He was on his way to obtain firewood for their home when the accident occurred. He said he cannot, after the accident, do as much around the house or walk very far without his leg hurting. His mother said he continues to complain of pain in the leg and sometimes walks with a limp. He did not complain or limp before the accident.
Defendants challenge the $50,000 general damage award as excessive, characterizing plaintiff's injury as a "broken leg" rather than a "broken hip." They argue $10,000 is the highest amount the jury could have reasonably awarded for the less serious "broken leg" injury. They also contend plaintiff suffered no permanent disability from the leg injury. The record does not substantiate either contention.
Both doctors who saw plaintiff after the accident testified unequivocally that plaintiff had a "fracture of the hip." Defendants elicited no testimony from any doctor to characterize the injury simply as a "broken leg." The orthopedic surgeon testified the surgery was routine for the doctor but not for the patient, who is expected to have pain while recuperating. He said "it would not be unheard of" for plaintiff to have pain two years after the surgery. Even though there were no complications during or after surgery, plaintiff testified that he continued to experience pain two years post-accident. See and compare Barbay v. Aetna Cas. & Sur. Co., 454 So.2d 181 (La.App. 1st Cir.1984), writ denied; and Chesson v. American Hardware Mut. Ins. Co., 412 So.2d 186 (La.App.3d Cir.1982). The metal plates and screws yet remain in plaintiff's hip and, according to the orthopedist, will occasionally discomfort plaintiff.
The surgeon did not assign a permanent disability rating when he released plaintiff from his care and apparently was not asked to do so. We do not assume plaintiff has a medically rated disability. The evidence, taken as a whole, would allow the jury to reasonably conclude that plaintiff was not able to do as much as he could do before the accident even though his doctor did not medically quantify plaintiff's disability. See Tyler v. Richardson, 476 So.2d 899 (La.App.2d Cir.1985), writ denied.
We are not persuaded by defendants' articulation, or argument, why this award is excessive and we find no other articulable reasons for concluding that the jury abused its great discretion in making the award. Under these circumstances, we need not compare the award to other awards made for similar injuries. Reck v. Stevens, 373 So.2d 498 (La.1979).

EXPERT WITNESS FEES
Appellants contend the trial court erred in fixing and taxing as costs the expert witness fees of plaintiff's two accident reconstruction experts because the experts did not testify at the rule to fix the fees. Appellants rely on Northwest Ins. Co. v. Borg-Warner Corp., 501 So.2d 1063 (La. App.2d Cir.1987). The circumstances there are distinguishable.
LRS 13:3666 B allows the trial court to fix expert witness fees either from the testimony adduced at trial on the merits or by rule to show cause brought against the party cast in judgment. The Borg-Warner record contained only the transcript of the *1245 rule to fix fees, not the trial transcript. The experts did not testify at the rule and apparently did not testify at trial about the basis of their charges for testifying.
Here, we have the trial transcript containing the experts' testimony as to their qualifications and the material they reviewed to form their opinions about the accident. Their testimony obviously assisted the jury in resolving the fault issue. The hourly fee and the amount of time each expert spent on the case up until trial was elicited on cross-examination during trial by defendants.
One witness testified he had spent about 18 hours on the case from "the preliminary calculations to right now, previous to [trial] today." His preparatory work included viewing the truck in Minden after the accident and reviewing the accident report, photographs and depositions. The other witness testified he had spent about seven or eight hours "investigating this accident." He also reviewed the accident report, photographs and depositions, but did not view any of the physical evidence.
After trial and before a judgment on the merits was signed, plaintiff filed the rule to fix expert witness fees and attached to it copies of each expert's statement itemizing his time and total fee charged to plaintiff. Each statement included charges for in-court and out-of-court time. One statement totaled $2,150 and the other totaled $1,500. In a letter written to the trial judge, defendants objected to any award of more than $150 for each witness representing his time of "less than two hours" on the witness stand.
The court minutes show that evidence was adduced at the rule to fix the fees and the matter was submitted after argument of counsel. The court notified counsel of its decision to fix and tax as costs the amount of fees each expert charged the plaintiff. These awards were included in the judgment on the merits.
Although the court is not bound by the fee arrangement between a litigant and his expert witnesses, it may award the full amount charged if the amount is reasonable in light of the many factors the court considers in fixing expert witness fees. See and compare Northwest Ins. Co. v. Borg-Warner Corp, supra; and LeBlanc v. Andrew, 497 So.2d 1056 (La.App.3d Cir. 1986).
Defendants argue that plaintiff did not carry his burden of proof at the rule to fix the fees because neither expert then testified and plaintiff's attorney simply submitted the experts' itemized statements. We do not have the benefit of a transcript of that hearing, but the trial transcript contains competent evidence of each expert's pre-trial preparatory work. These witnesses were cross-examined about their fees. They testified before the jury and the trial judge.
An expert witness is entitled to reasonable compensation for his court appearance and for his preparatory work. A trial court has discretion to fix the amount of the fee. Coon v. Placid Oil Co., 493 So.2d 1236 (La.App.3d Cir.1986), writ denied.
Defendants now complain that each expert's fee statement included charges for time spent in conference with plaintiff's attorney, for which defendants cannot be cast. They cite State, Department of Highways v. Manning, 322 So.2d 362 (La. App.2d Cir.1975); and Wetzka v. Big Three Industries, Inc., 409 So.2d 393 (La.App. 4th Cir.1982). The itemized statements do not specifically show charges for a conference with plaintiff's attorney.
Defendants cross-examined the expert witness at trial and have not shown whether any of the expert's pre-trial time was spent in conference with plaintiff's attorney. The statements simply show time spent on "conferences" and do not say with whom. Defendants made a blanket objection in the trial court to an award for any out-of-court time. Under these circumstances, and without specific record testimony to warrant reducing the fees for the limited portion of the preparatory time which defendants now contend was not compensable, we find no error or abuse of discretion in the trial court's fixing of the fees. See and compare Coon v. Placid Oil Co., and LeBlanc v. Andrew, supra.

*1246 DECREE
At appellants' cost, the judgment is AFFIRMED.

ON APPLICATION FOR REHEARING
Before LINDSAY, MARVIN, FRED W. JONES, Jr., HALL and JASPER E. JONES, JJ.
Rehearing denied.