691 So.2d 703 (1997)
Mona BOURGEOIS
v.
HERITAGE MANOR OF HOUMA.
No. 96 CA 0135.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
*705 Randall M. Alfred, Houma, for Plaintiff-Appellant Mona Bourgeois.
Laurence E. Best, R. Jeffrey Bridger, Best Koeppel, New Orleans, for Defendant-Appellee Heritage Manor of Houma.
Before CARTER, PARRO and McDONALD,[1] JJ.
PARRO, Judge.
In this workers' compensation action, the claimant appeals from the hearing officer's decision on a rule to tax costs in which court costs in the amount of $8,389.30 were taxed against her. We amend, and affirm as amended.

Facts
On December 16, 1991, Mona Bourgeois ("Bourgeois") was involved in a work-related accident while in the course of her employment with Heritage Manor of Houma, Louisiana ("Heritage Manor"). Following her accident, Bourgeois continued to work and/or receive her salary until June 1, 1992. On June 1, 1992, she began receiving temporary total disability benefits which continued through February 21, 1994. Her compensation benefits were discontinued due to Heritage Manor's determination that she was able to return to work earning more than 90 percent of her pre-accident wages. On April 4, 1994, Bourgeois filed a disputed claim for compensation against Heritage Manor on the basis of a continued disability.
After considering all the evidence offered at the hearing, the hearing officer found Bourgeois was physically able to engage in employment for wages in excess of her preaccident wages. The hearing officer noted she preferred to remain at home and receive wage benefits, rather than work. Based on these findings, the hearing officer signed a decision denying Bourgeois' claim for workers' compensation and dismissed her case with prejudice at her costs. This decision was not appealed.
Pursuant to the award of costs in its favor, Heritage Manor filed a rule to fix costs seeking reimbursement of expenses totaling $13,526.89, which it allegedly incurred and paid in connection with this matter. At the October 19, 1995, hearing on this rule, Heritage Manor introduced, without objection, copies of the invoices that corresponded to the expenses itemized in its rule. In the decision dated October 31, 1995, the hearing officer awarded Heritage Manor the sum of $8,389.30 for reasonable and necessary expenses and taxed that amount as court costs against Bourgeois.
The chart below lists both the costs awarded by the hearing officer as itemized in his written reasons for judgment and the costs that were requested in Heritage Manor's rule.

*706
 Costs Costs
 Awarded Requested
Stenographer fees for depositions:
 Harold Gamburg $ 234.65* $ 234.65
 Homer Rodgers 641.80* 641.80
 Christopher Cenac, M.D. 212.00* 212.00
 John Jackson, M.D. 101.45* 101.45
 Neil Baum, M.D. 97.80* 97.80
 William H. Kinnard, M.D. (4/26/94) 158.25* 158.25
 William H. Kinnard, M.D. (5/3/95) 57.50* 57.50
 Paul Fontana (to Best Koeppel) 440.84* 440.84
 Paul Fontana (to Randall Alfred) 184.72* 184.72
 Mona Bourgeois 324.20* 324.20
Dr. Christopher Cenac:
 Deposition fee 225.00* 450.00
 Medical examination and report (9/16/92) 432.50* 865.00
 Consultation fee __ 150.00
Dr. A. Delmar Walker:
 Deposition fee 225.00 450.00
 Medical examination and report (8/12/92) 428.00* 428.00
 Consultation fee 122.00* 244.00
Dr. Donald J. Judice:
 Medical examination and report (12/14/93) 133.50 267.00
Dr. John Jackson:
 Deposition fee 250.00 500.00
Dr. Neil Baum:
 Deposition fee 250.00 500.00
 Medical examination and report (7/18/94) 250.00 500.00
 Testing and examination (9/9/94) 425.00 425.00
Julie Smith:
 Vocational evaluation/Labor market survey 145.84* 291.68
Paul Fontana:
 Deposition fee 156.25 312.50
 Functional capacity evaluation 625.00* 1,250.00
Dr. Cornelius E. Gorman & Dr. Leighton E. Stamps:
 Psycho-vocational evaluation 1,000.00* 1,500.00
 500.00
 Trial testimony (includes $1,180 for travel) 1,032.50* 2,065.00
Copies of Medical Records:
 Dr. Judice 61.00 61.00
 Mr. Fontana 26.50 26.50
Miscellaneous:
 Videographer's fee for Mr. Fontana's deposition 140.00* 280.00
 Subpoena costs 8.00 8.00
Total $8,389.30 $13,526.89

Bourgeois appealed and contends the hearing officer abused his discretion in assessing against her those fees designated with an asterisk in the above chart.

Applicable Law
Under LSA-R.S. 13:3666, LSA-R.S. 13:4533 and LSA-C.C.P. art.1920, the trial judge has great discretion in awarding costs, including expert witness fees, deposition costs, exhibit costs and related expenses. Murphy v. Boeing Petroleum Services, Inc., 600 So.2d 823, 828 (La.App. 3rd Cir.1992). LSA-R.S.13:4533 provides:
The costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs.
LSA-R.S.13:4533 merely defines what is meant by the term "costs." It does not discuss who is entitled to costs and under what circumstances. Smith v. Two "R" *707 Drilling Co., Inc., 606 So.2d 804, 816 (La. App. 4th Cir.), writ denied, 607 So.2d 560 (La.1992). LSA-C.C.P. art.1920 provides:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
Therefore, we will begin by examining the workers' compensation law to determine if it excepts workers' compensation cases from the general statutory provisions.
It clearly does not. LSA-R.S. 23:1317(B) provides in pertinent part:
Costs may be awarded by the hearing officer, in his discretion, and when so awarded the same may be allowed, taxed, and collected as in other civil proceedings. The fees of expert witnesses shall be reasonable and shall not be allowed unless fixed in the judgment. The judgment rendered shall have the same force and effect and may be satisfied as a judgment of a district court.[2]
Furthermore, with respect to awarding costs, LSA-R.S. 23:1310.9 provides:
If the hearing officer before which any proceedings for compensation or concerning an award of compensation have been brought, under the Worker's Compensation Act, determines that such proceedings have not been brought on a reasonable ground, or that denial of benefits has not been based on a reasonable ground, the hearing officer shall assess the total cost of the proceedings to the party who has brought them or the party who has unreasonably denied payment of benefits.
The award of the total cost of the proceedings under this statute is mandatory upon a finding by the hearing officer that a compensation proceeding has not been brought on a reasonable ground. Because the hearing officer did not make such a finding in this case, LSA-R.S. 23:1310.9 is inapplicable. Thus, we focus on the language of LSA-R.S. 23:1317(B), which clearly authorizes a hearing officer to award costs in a workers' compensation case. See Keyes v. Rockwood Insurance Co., 502 So.2d 223, 228 (La.App. 3rd Cir.1987). Under this statute, the question of awarding costs lies within the sound discretion of the hearing officer, as it does with the courts under the general civil provisions.[3]See Smith v. Two R Drilling Co., Inc., 606 So.2d at 816; Keyes v. Rockwood Insurance Co., 502 So.2d at 228.
The trial court is not required to tax the costs of the defense's experts and witnesses against an unsuccessful plaintiff. Ashley Enterprises, Inc. v. Esplanade Plaza Co., 425 So.2d 1010, 1014 (La.App. 5th Cir.), writ denied, 432 So.2d 270 (La.1983). Nevertheless, the party cast in judgment generally should be taxed with costs. See Ratcliff v. Town of Mandeville, 551 So.2d 761, 763 (La. App. 1st Cir.1989), writ denied, 556 So.2d 37 (La.1990). The court in Guardalabene v. Tenneco Oil Co., 246 So.2d 708, 710 (La.App. 4th Cir.1971), noted the imposition of costs in workers' compensation cases does not differ from the imposition of costs in other cases, such that the claimant who loses in a workers' compensation case can be required to pay costs. On review, a hearing officer's assessment of costs can be reversed by this court only upon a showing of abuse of discretion. See State v. Nicholls College Foundation, 592 So.2d 419, 422 (La.App. 1st Cir. 1991), writ denied, 593 So.2d 651 (La.1992).

Expert Fees
Bourgeois contends certain awards of expert witness fees should be reduced. Authority *708 for fixing expert witness fees is found in LSA-R.S. 13:3666, which provides in pertinent part:
A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.
B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
(1) From the testimony of the expert relative to his time rendered and the cost of his services adduced upon the trial of the cause, outside the presence of the jury, the court shall determine the amount thereof and include same.
(2) By rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause.
C. In either manner provided in Subsection B, the court shall also determine and tax as costs, to be paid by the party cast in judgment, the reasonable and necessary cost of medical reports and copies of hospital records.
To have an expert's fee fixed by the trial court and properly taxed as costs under LSA-R.S. 13:3666, the expert witness must have been called to testify in court.[4]State, Department of Highways v. Salemi, 249 La. 1078, 193 So.2d 252, 254 (1966); Allstate Insurance Co. v. Aetna Casualty and Surety Co., 93-0588, pp. 3-4, 634 So.2d at 50. Experts who testify by deposition are entitled to have their expert witness fees taxed as costs, just as are experts who testify at trial, provided their depositions have been introduced into evidence. Laughlin v. Breaux, 515 So.2d 480, 485 (La.App. 1st Cir.1987). An expert witness is entitled to reasonable compensation for his court appearance and for his preparatory work. McGee v. Miears, 516 So.2d 1241, 1245 (La.App. 2nd Cir.1987). A party who does not call an expert witness to testify live or by deposition may not have the expert's fee for work preparatory to trial considered as an item of the costs and taxed as such. State, Department of Highways v. Salemi, 193 So.2d at 254. Such is the case where expert's written reports are filed into evidence in lieu of presentation of his testimony in court, without further stipulation by the parties. See Collins v. Texaco, Inc., 607 So.2d 760, 769 (La.App. 1st Cir.1992).
Factors to be considered by the trial judge in setting an expert witness fee include the time spent testifying, time spent in preparatory work for trial, time spent away from regular duties while waiting to testify, the extent and nature of the work performed, and the knowledge, attainments and skill of the expert. Additional considerations include helpfulness of the expert's report and testimony to the trial court, the amount in controversy, the complexity of the problem addressed by the expert, and awards to experts in similar cases. Most importantly, expert witnesses are entitled only to reasonable compensation. The amount agreed upon between an expert witness and the party calling him is not the criterion to be used by the court in assessing expert fees. Albin v. Illinois Central Gulf Railroad Co., 607 So.2d 844, 845-46 (La.App. 1st Cir.1992). However, the court may award the full amount charged if the amount is reasonable in light of the many factors considered in fixing expert witness fees. See McGee v. Miears, 516 So.2d at 1245. Although a defendant can have taxed as costs the reasonable cost of time spent by the expert in gathering facts necessary for his testimony, he may not have the time spent in consultation which only assists the attorney *709 in preparation for the litigation. Albin v. Illinois Central Gulf Railroad Co., 607 So.2d at 846.
Generally, the amount and fixing of expert fees lies within the sound discretion of the trial court and will not be disturbed in the absence of an abuse of discretion. See LSA-C.C.P. art.1920; Autin's Cajun Joint Venture v. Kroger Co., 93-0320 (La.App. 1st Cir. 2/16/94), 637 So.2d 538, 544, writ denied, 94-0674 (La.4/29/94), 638 So.2d 224; Albin v. Illinois Central Gulf Railroad Co., 607 So.2d at 845.
In the present case, a full trial on the merits took place. Evidence was presented by both parties. As part of its defense, Heritage Manor found it necessary to present the live or deposition testimony of several expert witnesses. The hearing officer had the opportunity to assess the services performed by the various expert witnesses. We will review the fees of those experts complained of by Bourgeois to determine if the hearing officer abused his discretion in fixing their fees.

A. Dr. Christopher Cenac

The hearing officer awarded Dr. Cenac $225 in expert witness fees for the perpetuation of his testimony by deposition. Bourgeois does not dispute that Dr. Cenac's deposition was introduced and accepted into evidence. In fixing the portion of expert fees attributable to each expert's deposition costs, the hearing officer reduced the amount charged by the expert witness by one-half. Of the various expert witness fees awarded for deposition costs, Dr. Cenac's is the only one Bourgeois complains of on appeal. She contends the $225 fee is excessive since Dr. Cenac's deposition occurred at his office after business hours, and lasted approximately one-half hour.
The hearing officer obviously relied on Dr. Cenac's medical testimony in deciding to dismiss Bourgeois' claim. Although the record does not have testimony from Dr. Cenac concerning preparation time, it is reasonable to conclude that he had to review his notes and Bourgeois' medical records before the deposition. Considering the above factors, this court concludes the hearing officer did not abuse its discretion in awarding $225 in expert witness fees to Dr. Cenac. This amount did not differ substantially from deposition fees awarded to the other medical experts.
As part of Dr. Cenac's expert witness fee, the hearing officer assessed his full charge of $432.50 for an independent medical examination of Bourgeois that Heritage Manor hired him to perform on September 16, 1992. Bourgeois' disputed claim form disclosed that Dr. William Kinnard, an orthopedist, was her treating physician, whom she began seeing on June 5, 1992.[5] Dr. Kinnard opined that Bourgeois had a severe neuorologic dysfunction and would require surgery in the near future. Heritage Manor, at its own expense, sought a second opinion from Dr. Cenac, an orthopedic surgeon. His examination revealed no objective evidence that Bourgeois had neurological deficits. At the time of the examination by Dr. Cenac, Heritage Manor was voluntarily paying weekly benefits to Bourgeois on the basis of a temporary total disability.
We do not deny that Dr. Cenac's examination and report constituted important evidence regarding Bourgeois' condition on which the hearing officer relied in reaching his decision. Further, an expert witness can be compensated for time spent in preparatory work for trial. Albin v. Illinois Central Gulf Railroad Co., 607 So.2d at 845. However, in light of the status of Bourgeois' claim when this examination was conducted, we do not consider the time spent by Dr. Cenac in performing the September 16, 1992 independent medical examination and in preparing his report to be preparatory work for trial. Thus, the hearing officer improperly included this expense of $432.50 in Dr. Cenac's expert witness fees.
Furthermore, the only costs taxable against a litigant are those provided for by positive law. Succession of Franz, 242 La. *710 875, 139 So.2d 216, 218 (1962); Moran v. Harris, 93-2227, p. 3 (La.App. 1st Cir. 11/10/94), 645 So.2d 1248, 1249. There is no positive law providing that the cost of an independent medical examination may be taxed as court costs. See Dyson v. Travelers Insurance Co., 256 So.2d 468, 469 (La.App. 4th Cir.1972). The court in Dyson held that the costs of a medical examination, including the costs of diagnostic testing, and treatment are not proper costs taxable by the court. Such services and bills are more in the nature of special damages than costs attributable to the trial of the case.
Employers are responsible for furnishing the required medical evaluations and treatment necessary to establish whether or not the employee is disabled and entitled to weekly benefits. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 281 (La.1993); see LSA-R.S. 23:1121(A).[6] Although LSA-R.S. 23:1203 allows an employee to recover medical expenses when a proper showing is made, there is nothing in the workers' compensation law that allows an employer to be compensated for medical expenses incurred to obtain a second opinion regarding an employee's alleged disabling condition under the circumstances of this case. Therefore, the cost of the September 16, 1992 examination by Dr. Cenac is not otherwise recoverable by Heritage Manor, and the hearing officer abused his discretion in taxing these expenses as court costs.

B. Dr. A. Delmar Walker

Bourgeois argues that Dr. Walker's $428 fee for the August 1992, medical examination and report was improper because it was performed when Heritage Manor was voluntarily paying workers' compensation benefits. Prior to engaging the services of Dr. Cenac and shortly after receiving Dr. Kinnard's opinion regarding Bourgeois' condition, Heritage Manor requested that Dr. Walker, an orthopedic surgeon, examine Bourgeois. As previously concluded, the expense of such examination and report are not expert witness fees within the meaning of LSA-R.S. 13:3666 or costs within the meaning of LSA-C.C.P. art.1920 and are not otherwise recoverable by Heritage Manor. Therefore, the hearing officer abused his discretion by including this expense in the expert witness fees awarded to Dr. Walker.
Bourgeois also contends the hearing officer abused his discretion by awarding costs for Dr. Walker's consultation fee. Although a defendant may have taxed as costs the reasonable cost of time spent by the expert in gathering facts necessary for his testimony, he may not have taxed as costs the time spent in consultation which only assists the attorney in preparation for the litigation. Albin v. Illinois Central Gulf Railroad Co., 607 So.2d at 846. On appeal, Heritage Manor does not dispute that an expert's fee for a pre-trial consultation with counsel is nontaxable and agrees Dr. Walker's consultation charges of $122 were erroneously included in the award of costs. Thus, the decision shall be modified accordingly.

C. Julie Smith

The hearing officer awarded Julie Smith $145.84 in expert witness fees for the performance of a vocational evaluation/labor market survey. His written reasons for judgment on the claim reflect that Ms. Smith performed a vocational evaluation of Bourgeois in late January and early February 1994, which would have been immediately prior to Heritage Manor's termination of Bourgeois' weekly benefits. Although her report was apparently submitted into evidence at the trial, we find no evidence in the record before us suggesting that Ms. Smith testified at trial, that her deposition was introduced and accepted into evidence, or that she ever qualified as an expert witness.
*711 Furthermore, there is no evidence that the parties stipulated to her qualifications or to the introduction of her report in lieu of her being called to testify. Since she did not qualify as an expert and expressed no expert opinion, she was not entitled to an expert witness fee under LSA-R.S. 13:3666(A). See Moran v. Harris, 93-2227 at 3, 645 So.2d at 1250. Thus, the hearing officer abused his discretion in taxing as court costs a fee for Ms. Smith's vocational evaluation.

D. Paul Fontana

Mr. Fontana performed a functional or work capacity evaluation of Bourgeois from July 11 through July 15, 1994, costing $1,250. Mr. Fontana's deposition was introduced at the trial on the merits. Bourgeois objects to the inclusion of $625 in Mr. Fontana's award of expert witness fees on the basis that the functional capacity evaluation was performed pursuant to an Office of Workers' Compensation order following a conference with counsel. We find no merit in this argument.
Following the filing of Bourgeois' claim and pursuant to court order, Mr. Fontana's services were engaged. According to the Center for Work Rehabilitation, Inc.'s invoice, a 12-hour work capacity evaluation was performed, the results of which were testified to by Mr. Fontana. Based on the results of his evaluation, Mr. Fontana gave opinion testimony regarding Bourgeois' ability to work. The hearing officer could have reasonably concluded the time spent performing the functional capacity evaluation was time spent in preparatory work for trial. Therefore, we find no abuse in the hearing officer's inclusion of $625 in Mr. Fontana's award of expert witness fees.

E. Dr. Cornelius E. Gorman

Dr. Gorman was employed to conduct a psycho-vocational evaluation of Bourgeois. His charge for this service was $1,500. The hearing officer's reasons for judgment on the rule indicate an award of expert witness fees to Dr. Gorman and Dr. Leighton Stamps. Although the record on appeal contains an invoice from Dr. Stamps for $500, the invoice does not reveal any information about the charge. We only know that Drs. Gorman and Stamps share an office suite. Furthermore, we note that Dr. Stamps did not testify in this matter. Thus, his preparatory work time should not have been considered by the hearing officer in determining Dr. Gorman's expert witness fees. The hearing officer obviously based his award in part on the amount charged by Dr. Stamps, which was an abuse of his discretion. Reducing the fees awarded by the amount obviously attributable to Dr. Stamps' services would allow for recovery of $750 for Dr. Gorman's preparatory work, which this court deems equitable in light of the factors mentioned above.
Bourgeois also contends that the amount of expert witness fees fixed for Dr. Gorman's live trial testimony was excessive. Dr. Gorman charged $885 for the time spent in court and $1,180 for travel, totaling $2,065. The hearing officer awarded one-half of the total charges as expert witness fees. Bourgeois contends this award is excessive since Dr. Gorman's presence in court for most of the day on which he testified was unnecessary and since he testified for less than one hour. It was within the hearing officer's discretion to award Dr. Gorman expert witness fees for the time he spent testifying and for the time he spent in court waiting to be called to testify. State, Department of Highways v. United Pentecostal Church of Hodge, 313 So.2d 886, 894 (La.App. 2nd Cir.), writ denied, 318 So.2d 60 (La.1975), cert. denied, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975). However, we question the amount Dr. Gorman charged Heritage Manor for travel. The record reveals Dr. Gorman's office is located in Mandeville. This matter was tried in Houma. Considering the distance between these two towns, we conclude that Dr. Gorman's charge for "Travel-Portal to Portal" was clearly excessive. The hearing officer's award was obviously based on Dr. Gorman's total charge of $2,065, which included $1,180 for travel. Thus we conclude he abused his discretion in fixing the expert witness fees of Dr. Gorman. Considering the factors mentioned above and the evidence in the record, we conclude that a reasonable fee for Dr. Gorman's testimony and travel is $800.

*712 Stenographer Fees

Bourgeois objects to the award of stenographer's fees because the imposition of these costs is burdensome and unfair. She offers nothing in support of this argument. LSA-C.C.P. art.1920 states in pertinent part, "[e]xcept as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." LSA-R.S. 13:4533 states the costs of taking depositions and copies of acts used on the trial shall be taxed as costs. Reading the article and the statute in pari materia, we are unable to find that the hearing officer abused his discretion in this regard. This assignment is without merit.
Bourgeois argues the hearing officer abused its discretion in awarding as costs the stenographic expense of her deposition because it was allegedly not utilized by the hearing officer in reaching his decision, nor was it used to question or impeach her trial testimony. A copy of a deposition obtained for private use of a litigant is not an allowable cost. Liquid Carbonic Corp. v. BASF Wyandotte Corp., 468 So.2d 1225, 1232 (La. App. 4th Cir.1985). However, Bourgeois does not dispute that Heritage Manor introduced her deposition into evidence. Although the hearing officer made no specific mention of her deposition in his written reasons for judgment on the claim, we note the importance he placed on the impeachment evidence. Therefore, we find no abuse of discretion in the hearing officer's award of costs for the stenographer's fees for Bourgeois' deposition.

Videographer's Fee
Mr. Fontana's deposition was stenographically recorded and videotaped. LSA-C.C.P. art. 1440 allows the recording of depositions by other than stenographic means. Since the videotape recording of Mr. Fontana's deposition was not played for the hearing officer or introduced into evidence, Bourgeois argues the hearing officer abused his discretion in awarding costs for videographer's fees. In its brief, Heritage Manor acknowledged that absent an order by the hearing officer requiring videographic and stenographic recording of depositions submitted in evidence or stipulated to by the parties, both forms of recordation are not necessarily taxable as costs. See Goodwin v. Hartford Accident & Indemnity Co., 530 So.2d 1218, 1221 (La.App. 2nd Cir.1988). Heritage Manor concedes the hearing officer erroneously awarded costs in the amount of $140 for the videographer's fee associated with the taking of Mr. Fontana's deposition. Therefore, the decision shall be modified accordingly.

Decree
For the foregoing reasons, we amend the decision of the hearing officer to decrease the award to Heritage Manor from $8,389.30 to $6,638.46 ($8,389.30, less Dr. Cenac's examination fee of $432.50, Dr. Walker's examination fee of $428 and consultation fee of $122, Ms. Smith's vocational evaluation fee of $145.84, videographer's fee of $140, and the $482.50 reduction in Dr. Gorman's expert witness fees). Each party is assessed with its respective costs of this appeal.
AMENDED IN PART AND, AS AMENDED, AFFIRMED.
NOTES
[1] Judge J. Michael McDonald of the Nineteenth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The statute continues, "The director shall fix the fees to be charged by experts in each field of expertise on an hourly basis for the taking of the expert's deposition and travel time if the deposition is taken away from the expert's regular place of business." However, the director has not promulgated a fee schedule of any kind, so this court will be guided in its evaluation by the reasonableness of those fees, as the statute prescribes.
[3] The fact that the hearing officer is vested with great discretion in assessing and awarding costs is also provided in Hearing Officer Rule 2119(A) which provides: "Costs shall include a $30.00 filing fee, and may include expert witness fees, court reporter fees, and costs of depositions and such other costs allowed by law, at the Workers' Compensation Judge's discretion." LAC 40:2119.
[4] This court notes that, with respect to expert witness fees, it is fundamental that the witness be first deemed an expert in the field in which his testimony is offered. LSA-C.E. art. 702; Allstate Insurance Co. v. Aetna Casualty and Surety Co., 93-0588, p. 4 (La.App. 1st Cir. 3/11/94), 634 So.2d 49, 50-51.
[5] On June 1, 1992, Heritage Manor began paying Bourgeois temporary total disability benefits which continued through February 21, 1994.
[6] With respect to examinations of the injured employee, LSA-R.S. 23:1121(A) provides:

An injured employee shall submit himself to an examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary and at reasonable hours and places, during the pendency of his claim for compensation or during the receipt by him of payments under this Chapter. The employer or his worker's compensation carrier shall not require the employee to be examined by more than one duly qualified medical practitioner in any one field or specialty unless prior consent has been obtained from the employee.